### JABEZ H. WELD *versus* MOSES HADLEY.

When he to whom a tender of specifick articles is made in pursuance of a contract, refuses to accept the tender, he acquires no property in the articles tendered, even when the contract is discharged by the tender.

TROVER for 846 lbs. of leather, of the value of 336 dollars, alleged to have been converted by the defendant on the 1st January, 1811.

The cause was tried here at May term, 1817, on the general issue, and a verdict taken by consent for the defendant, subject to the opinion of the court upon a statement of facts in substance as follows:

*Hadley* gave *Weld* a note, dated August 9, 1808, for 300 dollars, payable in good merchantable leather, at cash price, in two years from January 1, 1809. When the note became due, *Hadley* tendered to the plaintiff a quantity of leather, but a dispute arose as to the price of leather, and *Weld*, thinking the quantity not sufficient to pay the note, refused

to receive it, and *Hadley* took it away and used it. *Weld* then brought a suit upon the note ; *Hadley* pleaded the tender in bar, and issue being joined upon the tender, the jury found that a sufficient quantity was tendered, and judgment was rendered in favour of *Hadley*.

After that suit was determined, *Weld* demanded the leather of the defendant, and tendered the expenses of keeping. *Hadley* refused to deliver the leather, and thereupon this suit was brought.

The cause was argued here at the last term by *P. Noyes* for the defendant, and *J. Bell* for the plaintiff.

*Noyes*, for the defendant.—To maintain this action, the plaintiff must have either a general or a special property in the leather. It is presumed that the plaintiff contends for a general property. A strict legal property of the plaintiff must be proved. Nothing short of this will maintain the action.

It is presumed that the plaintiff founds his right to the leather either upon the contract between him and the defendant, upon the tender by the defendant and his own refusal, or upon the former judgment in favour of the defendant. No other basis on which he can rest his claims can even be conjectured.

Did the contract of the defendant give the plaintiff a property in any of the defendant's leather? A contract binds the person of the contractor, and is to be enforced against him. Suppose B. promises to deliver to C. a particular horse, at a day appointed, and fails to deliver him according to his contract, would it be contended that by any rule of the common law, that the horse became the property of C. in consequence of that promise, and that C. could claim the horse of D., to whom B. had sold and delivered him after the promise made to C.? Much less can it be contended that the promisee may claim any specific part of the promisor's goods not designated in the promise. "The " right (says *Pothier*) which the obligation gives to the " creditor to prosecute for the payment of the thing, which

"which the debtor bound himself to give, is not a right,
"which it gives him to the thing, *jus in re ;* it is only a right
"against the person of the debtor to have him condemned to
"give the thing.   The thing which the debtor bound him-
"self to give continues still to belong to him, and the cred-
"itor can become owner of it only by the actual or fictitious
"delivery, which the debtor may make in discharge of the
"obligation.   Until this delivery, the creditor has only the
"right to demand the thing, and he has that right only
"against the person of him who contracted the debt, his
"heirs or universal successors."—*Pothier on Oblig.* N. 151.
From this doctrine of *Pothier,* which perfectly agrees with
our common law, it is clear that the contract of itself gave
the plaintiff no property in the leather.

Did the tender, which was merely an offer of the leather
by the defendant to the plaintiff, give the plaintiff a proper-
ty in the leather?  If accepted, it would.   The plaintiff
contends now that his refusal is to have the same effect that
his acceptance of the leather would have had.   One effect
it certainly had—it discharged *Hadley* forever from his con-
tract ; and when a contract is discharged by the perform-
ance of it, or what is equivalent to a performance, the obli-
gation of the debtor is as if the contract had never existed.
It is on this principle that in actions of assumpsit the gen-
eral issue, " *never promised,*" is pleaded, when the promise
has been fulfilled ; which plea on any other ground would
not be true in such case.   In what case can it be shewn that
the discharge of one obligation, *ipso facto,* creates another?
Yet such must be the case, if any obligation exists after the
tender.

It is presumed that it will not be contended that money
tendered by the debtor, and refused by the creditor, be-
comes the property of the creditor in consequence of the
tender.   A tender of money does not discharge the obliga-
tion.   It still exists, by our law, and the effects of a tender
upon interest and costs may be avoided by a subsequent

demand of payment. To save interest and costs, the debtor must have the money always ready when called for by the creditor. In a plea of tender, the debtor must say, that he offered the money to the creditor, and has been ever since, and still is, ready to pay it to him. This is on the principle that the original obligation still exists, and that no property in the money tendered passes by the tender to the creditor without acceptance. The money is still the property of the debtor ; for if it be lost after a tender and refusal, he must bear the loss. If a debtor who has tendered money for his debt, is sued for the debt, and he pleads the tender, and brings the money into court, and offers it there to the plaintiff, it does not even then become the property of the creditor till accepted by him. For if, after the tender in court, the suit abate by the death of the plaintiff, the bringing the money into court is no bar to a suit by the executors.— *Bacon Ab., Tender I., Guillim's ed., London.* The rule of the court does not compel the creditor to accept the money, nor can the court make it his property, without his consent ; otherwise no action could be maintained by the executor after the debt had been tendered to his testator in court. If it be contended that in ordinary cases the plaintiff has a right at any time after a tender in court to take the money, and the defendant is not permitted to withdraw it, we answer, this is not a consequence of any principle of law that vests the property in the plaintiff, but it is a rule of practice in court ; a rule known and understood by the debtor at the time he brings the money into court, to which rule and all its terms and conditions he agrees, when under it he brings the money into court. One of the implied terms of the rule is, that the defendant shall not be at liberty to take the money again in ordinary cases, though it should appear on trial that the money was not due to the plaintiff, but that the officer of the court shall hold it for the plaintiff, and deliver it to him at any time when he will accept it. This is similar to what in the French law is called *consignation.*

Under this rule of practice, the debtor who pays the money into court, to induce the court to forbear to give judgment against him, agrees that *the money shall remain in court and be delivered by the officer of the court to the creditor whenever he will accept it.*

And it is on this like implied agreement that the court forbear to render a judgment for the same money for the plaintiff.

The reason then why the plaintiff in such a case may take the money at any time after it is brought into court, is this—The debtor, by availing himself of the rule for paying money into court, has agreed that the creditor may take it at any time, and that the officer of the court shall hold it, till the creditor will accept it. And the plaintiff's right to take the money is not a consequence or legal effect of a tender only.—For, laying aside the idea of this rule of court, it is not easy to perceive why a tender in court, without acceptance, should have any more or other effect on the money tendered, than a tender out of court before the suit was brought.

The plea of tender and profert of the money in court is merely a repetition of the tender before made out of court.

Farther, laying aside the idea of that rule, and of one of the terms of it on the part of the court, which is an agreement that the officer of the court will keep the money for the plaintiff, whenever he will accept it, there seems to be no reason why the officer of court should be obliged to hold it as the plaintiff's banker, if the tender in court was such a payment of the debt as transferred the property in the money to the creditor immediately, without his acceptance. The deposit of money under this rule, which seems to have every essential feature of the *French* consignation, is allowed by courts to prevent a debtor who is ready and willing to pay, from being harassed and vexed by a persecuting creditor—and the effect of it on the property deposited arises from the agreement of parties.

Weld
*vs.*
Hadley.

(1) *Bac. Abr.*
*Tender* 466.

(2) *Bac. Abr.*
*Tender N.* 472.

(3) *Coke Lit-*
*tleton* 207. *a.*
*Elliot* vs. *Cal-*
*low, Salk.* 597.
—-*Bac. Abr.*
*Tender I. p.*
466.

That the plaintiff may at any time take the money paid into court—is a general rule. But is said that if he proceed in his suit, he cannot afterward take the money, *without leave of court*(1). And in the case of money brought into court by an executor or administrator, defendant, who is not supposed to have a perfect knowledge of the debt, if the plaintiff is nonsuited the defendant is permitted to take the money again—the plaintiff is not allowed to take it(2). This shews that a tender, though in court, does not necessarily vest in the creditor any property in the money tendered.

It is settled, that if the plaintiff take issue on the tender, and it is found against him, he looses all remedy for his debt, and the defendant shall have the money that he tendered. (3). And yet in this case the obligation to pay the debt is forever discharged.

*Littleton*, speaking of estates on condition, (*Sec.* 335, *Coke's Comm. page* 207,) says, " Be it remembered that in such case, where such tender of the money is made, and the feoffee refuse to receive it, by which the feoffor or his heir enter, &c. then the feoffee hath no remedy *by the common law* to have this money, because it shall be accounted his own fully that he refused the money when a lawful tender of it was made unto him."

*Coke*, in his commentary, page 207, puts several cases in which he illustrates and confirms the doctrine of *Littleton*.

It is certainly a new idea, and not found in the common law, that a mere offer (for a tender is no more) to pay or deliver any thing to a creditor in payment of a debt, and his refusal to accept it, makes the thing his property.

*Littleton* knew nothing of it when he said, in the section cited, that the person to whom the money was tendered hath no remedy by the common law to have this money. Nor was it known to *Coke*—if it had been he surely would have mentioned it in his commentary.

It is a well known principle that a deed or gift conveys no estate to the grantee, unless he accepts the deed or gift. His acceptance is never presumed against his express refusal.

The article being due by contract, can make no difference, unless a man is obliged, willing or unwilling, to become the owner of whatever is legally tendered to him in payment of a debt. We have already shewn that the law does not make him the owner of money that is tendered to him, without his acceptance—and why should it force upon him any other article?

The agreement of the creditor to accept the goods tendered is essential to his acquiring a property in them.

*Pothier* says, "one cannot transfer his goods to another without his will concur in the acquisition of it." *Treatise on Obligations*, sect. 2, *p.* 5, *n.* 4. The same writer says, (*n.* 537,) "consignation is not properly a payment, for payment essentially includes the transferring of the property of the thing which is paid to the creditor; and it is evident that the consignation *does not transfer the property of the thing consigned to the creditor, as the creditor can only acquire it by receiving voluntarily the thing which is tendered to him.* Dominium non acquiritur nisi corpore et animo; but though the consignation which is made on the refusal of the creditor to receive the thing, or sum due to him, which is tendered to him, be not an actual payment, yet when it is validly made it is equivalent to a payment, and extinguishes the debt as well as actual payment made to the creditor.

And again, speaking of the effect of a consignation, *Pothier* says, (*n.* 545,) "if it be adjudged valid, the debtor is holden to have been discharged by it, and although, subtilitate juris, *he remains proprietor of the coins consigned, till they be taken by the creditor.*"

Thus we have the opinion of writers of the highest authority on the common law, that a tender without acceptance does not transfer the property from him who makes the tender to him to whom it is made. And *Pothier*, a

*French* jurist of high repute, tells us the law is the same in *France.*

We have also seen that if the defendant pleads a tender, and brings the money into court, and the plaintiff takes issue on the tender, and the issue is found for the defendant, whereby the tender is established and the defendant is discharged—the defendant shall have the money—the plaintiff shall not have it. This is the rule of the common law. Why should there be a different rule for cumbrous articles?

A tender of cumbrous articles has by the common law one effect different from a tender of money for a debt—it discharges forever the obligation by which the debtor was bound to deliver them.

Perhaps it will be urged that this consequence of a tender of such articles gives to the creditor a property in them.

Upon the most diligent search that I have been able to make, I find no writer on the common law who ever intimates that such an opinion was ever held by any one—nor have I found any case reported, that is decided on such ground.

To say that a tender, which is a mere offer to part with property, when not accepted is a parting with the property, seems to be a confusion of language. The creditor has no property in the thing tendered to him till the debtor's property in it ceases. That does not cease by a mere offer not accepted—and it is too late to accept after the offer itself has ceased.

If, as has been shewn, the defendant's contract to deliver a quantity of leather to the plaintiff gave to the plaintiff no property in the leather in question, and if a tender of it, which was refused, did not necessarily change the property and transfer it from *Hadley* to *Weld*, it is not easy to see how the circumstance of the mere discharge of the contract by that tender should necessarily produce such an effect.

The debt may be discharged by the common law without

either payment or tender of the thing due.—As if the debtor be *ready* at the time and place to deliver the thing he has promised to give, and no person appears to receive it—the contract or debt is as completely discharged as by a tender of the thing due. Yet in this case there can be no pretence that the creditor has any property in the thing which the debtor had ready but did not tender, unless it be derived from the mere contract itself.

But we have shewn that the contract alone gives to the creditor no property in the articles which are promised to be delivered to him, until the actual or fictitious delivery.— *Pothier* 151.

Since neither the contract to deliver the articles—nor the actual tender of them is refused—nor the discharge of the contract by such tender, have either of them, by the common law, any tendency to change the property in the articles which were due and tendered—I cannot see how putting them all together should make them produce such an effect.

The principle of the rule that if the plaintiff take issue on the tender when the money is in court, and if the issue be found against him, the defendant shall keep the money—applies with much greater force where issue has been taken by plaintiff on a plea of tender of cumbrous articles, and found against him.

In the first case the money is ready in court—is confessed to have been due and is unpaid—and *the obligation is discharged.* The defendant takes the money again, and the plaintiff by the common law has no remedy.

In the latter case the article tendered is not present; and to bring it forth and deliver it might be a burden and expense to the defendant, which it would be unreasonable to lay upon him—after the plaintiff's unreasonable refusal to receive it when tendered according to agreement.

In the record offered in evidence, in the case at bar, it appears that the leather was tendered to *Weld*—he refused it

—sued *Hadley* on the contract for it—when *Hadley* pleaded the tender—*Weld* took issue on it. Why should not the rule which applies to a traverse of a tender of money apply in this case? By this rule *Hadley* should have the leather, and *Weld* should not.

It is said that the judgment which established the validity of the tender of the leather is equivalent to the decree of a court of *France* establishing the validity of a consignation, and that therefore the tender is to have the same effect here that a consignation has in *France.*

We answer first—A consignation does not, in *France,* vest in the creditor the property of the articles tendered, till he accepts them. So says *Pothier, n.* 537. And this is decisive of the question OF PROPERTY in the leather in dispute, if the law of *France* is relied on in this case.

Secondly—There is a want of analogy between a consignation, under a rule of the court in *France,* and a tender not made in court of cumbrous articles, according to our common law, in one very material circumstance. *Pothier* says, *n.* 536: "Consignation is a deposit which the debtor makes by authority of the court of the thing or sum which he owes IN THE HANDS OF A THIRD PERSON;" and afterwards, *n.* 545, he says: "The consignee by the consignation obliges himself, *tanquam ex quasi contractu, to* restore the coins to the creditor, if the consignation be adjudged valid, or to the debtor who consigned them, if it be declared null."

From this it appears that consignation is made under a rule of practice of the courts of *France*—and it is made with an express or implied agreement of the consignor that if the consignation be adjudged valid the consignee may deliver the deposit to the creditor at any time when he will accept it,—else how could *Pothier* say that "The consignee binds himself, ex quasi contractu, to restore the coins to the creditor, if the consignation be adjudged valid, or to the debtor who consigned them, if it be declared null?"

While the deposit is in the hands of the consignee, if the consignation be valid, he has by the terms of the consigna-

tion the consent of the debtor to deliver it to the creditor. The deposit is left with the consignee for that purpose ; and so long as the deposit remains in his hands, so long the debtor continues to offer it to the creditor, and so long the creditor has time to accept it ; and when he does accept and take it to himself, it is with the consent of the debtor, its owner, and then the property is changed.

But a tender with us at the common law is a very different affair. It is not made under a rule of court directing the article to be deposited under the term of a consignation, in the hands of a third person, who binds himself, *tanquam ex quasi contractu*, to deliver the deposit to the creditor, if the tender be valid, or the debtor if the tender be declared null. No deposit is made, nor can the debtor take any course under the common law to make his tender a matter of record, and shield himself against a suit at a future day, on his obligation. He must wait till he is sued, and then prove the tender as well as he can. The object of the consignation in *France* seems to be, to make the debtor's discharge immediately a matter of record—not to change the property tendered. The debtor who makes a tender of cumbrous articles at the common law is obliged to allow to the creditor sufficient and convenient time and opportunity to examine the article tendered, and ascertain its sufficiency to pay the debt—and if he does not, the tender is null. But he is not obliged to continue the tender longer than that purpose requires—nor does he continue it any longer. He need not part with the possession of the articles. The debtor never says to the creditor, This article which I have tendered to you, and you have refused, I will hold as consignee till you choose to sue me on the contract, and try the validity of the tender ; and if the tender be adjudged valid, you may then take the article at any time. Yet such must be the language of the debtor if, after the tender, he is in the situation of a *French* consignee, and bound, *tanquam ex quasi contractu*, to deliver the article to the creditor, if

the tender be adjudged valid. He says to the creditor—Take the article now. If refused, he offers it no longer. I have looked in vain for any rule of the common law by which the debtor who has made a tender of cumbrous articles not accepted in confidence, as holding them afterwards as bailee or consignee of the creditor.

The cases of *Slingerland* vs. *Morse & al.*, 8 *Johnson*, 474, and *Coit & al.* vs. *Houston*, 3 *Johnson's Cases* 243, are cited by the plaintiff to shew that a tender at common law has the same effect here as a consignation under the French law has in *France.*

But it is to be observed that the point did not arise, and therefore could not be judicially decided in either of these cases.

In each of those cases the question was, whether the tender made by the defendant was a bar to the plaintiff's action. There were other previous questions, but that was the main question on which the cases were decided. In *Slingerland* vs. *Morse & al.* the plaintiff, having distrained for rent the goods in question, and thereby acquired a special property in them, bailed them for safe keeping to the defendants, who obligated themselves to restore the goods to the plaintiff in six days after demand. On this obligation the suit was founded. The defendants tendered the goods in a particular manner, and the question was, whether the tender was well made, so as to discharge their obligation and bar the action.

It is to be observed that the plaintiff, *Slingerland*, had a special property in the goods when he bailed them to the defendants—a property which would have enabled him to maintain an action of *trover* or *trepass* for them, against any man into whose hands they might have gone, or remained after the tender. And this is the true ground of the remark of the court, that the plaintiff must resort to the specifick articles tendered, and that the person in whose possession they were held them as his bailee. It is evident *Slingerland's* property in the goods was not a consequence of the

GRAFTON, NOVEMBER TERM, 1818. 307

Weld
vs.
Hadley.

tender, for he had the same property in them before the tender, and even before he bailed them to the defendants, and took their obligation to return the goods to him.

The remark of the court, or judge, that this effect of the tender by the defendants, and a refusal by the creditor, is analogous to a consignation under the French law, seems to have been added merely as a flourish. It certainly made no part of the decision of the question before the court, and might with great propriety have been omitted. Adjudged cases are authorities only on points arising in, and adjudicated for, the decision of those cases. The reporting of obiter opinions of the court on points not arising in the cause, and not litigated, is one of the modern methods of swelling alike the size and the price of law books; but that is not the only or worst effect—it misleads the student.

In the case of *Coit & al.* vs. *Houston*, on a promissory note, the defendant pleaded the general issue, with notice that he would give in evidence a written agreement of the parties that the defendant should pay the contents of the note in coals at a stipulated price; and on the trial the defendant proved the agreement. He also proved that he had the coals ready, and repeatedly offered them to the plaintiffs; and the plaintiffs at one time said they would call and take the coals—at another time they said they would send for the coals, and that the plaintiffs had offered the coals for sale, but the coals remained all the time at the defendant's coal yard.

It was argued for the defendant, that all this amounted to an accord and satisfaction. A verdict was found for the defendant; and on motion to set it aside, the court decided that the agreement executed amounted to an accord and satisfaction, and would bar the suit on the note; and that a tender of performance of the agreement by the defendant would have the same effect to discharge the defendant as actual performance.

The court also decided that there was evidence in the case from which the jury might infer that the plaintiffs did

accept the coal, and therefore the accord and satisfaction was well proved. On this ground the verdict was supported. *Thompson* and *Kent* said, that as a consequence of this principle, the defendant after the tender held the coals as bailee of the plaintiffs.

This was on the ground that the plaintiffs had accepted the coals when offered to them. And there is no doubt that in such case the property is changed, and the article remaining in the hand of the former owner ; he holds it as bailee of the new owner.

The court held, and very correctly, that the tender and acceptance, without any actual removal of the coal, changed the property.

But they did not decide that a tender and refusal would change the property, or any thing like it.

To make this case of *Coit & al.* vs. *Houston,* a precedent for the case of *Hadley* and *Weld,* the court ought to be satisfied that a tender and refusal is precisely the same in effect on the property tendered as a tender and acceptance. *Pothier* tells us they have not the same effect—but very different.

The case of abandonment of goods by the insured to the insurer does not seem, when examined, to furnish a principle on which to found a property in the plaintiff to the leather in question.

The property which the insurer acquires in the goods abandoned is not the natural consequence of the abandonment. It is a principle of marine law, and grew out of the peculiar stipulations contained formerly in the contract or policy of insurance—which stipulations gave to the one party the right to abandon, and to the other the property in the goods abandoned.

*Marshall,* in his treatise on insurance, says—" It has been " said, that the practice of abandoning dates its origin from " the period when the contract of insurance first came into " use, yet it does not seem to be a right which necessarily re- " sults from the nature of the contract. That the loss or dam-

" age should be made good by the insurer, who has made him-
" self responsible, is perfectly reasonable, and conformable to
" the spirit of the contract.  But it does not necessarily fol-
" low from thence that in case of a disaster he should *be
" forced* to become the proprietor of the ship, or goods insur-
" ed, merely because he was a surety for the safe arrival."

" It seems more probable that abandonment arose from
" the practice of occasionally introducing into policies partic-
" ular stipulations, that if the thing insured should be spoiled,
" or greatly damaged by any of the perils insured against, it
" should be abandoned to the insurers, who should thereupon
" be obliged to pay the entire sum insured ; and that simply
" making good the damage should not be sufficient to dis-
" charge them.  Stipulations like this being frequently in-
" troduced into the contract, became at length the foundation
" of general rules, which have been established by positive
" law in some countries, and adoped in others as a part of the
" general law of insurance."—*Marshall*, ch. xiv, page 479.

From this it appears that the right of the insurer to the
things insured, after abandonment by the insured, arose from
express stipulations in policies of insurance, and by long
usage became law among merchants, in this peculiar sort
of contract.    And policies are made in the full knowl-
edge that this law applies to them.   The case of an insurer
acquiring a property in the goods abandoned after a loss,
notwithstanding his refusal at first to accept the abandon-
ment, is not parallel to the case of a creditor refusing the
goods due and tendered to him for a debt.   The insured is
bound to abandon immediately on receiving information of
the loss.   The insurer may know that the loss has happen-
ed, but he may not know whether the insured has a right to
abandon and compel the insurer to pay for the loss.    There
may have been a deviation from the voyage insured, which
would discharge the insurer and take away the right to
abandon.   Of this both parties may be ignorant.   And it
may be difficult for the insurer to obtain any knowledge of
it until long after the abandonment.   It would be unreason-

able to compel the insurer to accept the abandonment and pay the loss, or forfeit the claim, which by the terms of insurance he might have to the goods abandoned, before he has had time to learn the facts on which his liability for the loss, and his right to the goods abandoned, depend. His refusal, therefore, at such a time, to accept the abandonment, ought not to prejudice his right acquired by the terms of the insurance.

If any deviation from the voyage insured, or other cause, has rendered the insurance void, I presume it will not be contended that the abandonment by the insured divests his property in the goods, and gives them to the insurer.

In the case of a tender of a thing due to a creditor, he knows precisely what is due to him, and time sufficient is allowed to him to examine the thing tendered, and be informed of its quantity and value, or sufficiency to pay the debt. He knows also the right of the debtor to make the tender, and be discharged. It is, therefore, but reasonable that the creditor should at the time of the tender accept or refuse the thing tendered, and be forever bound by that acceptance or refusal.

In the contract of insurance, both parties agree that when the property insured is rightfully abandoned, it shall from that moment be the property of the insurer, and be at his charge and expense.

But there is no agreement between the debtor and creditor that the debtor's property in the goods lawfully tendered and refused, shall from that moment cease, and be abandoned, and that the creditor will, from that moment, be the owner of them, and they shall be kept at his charge and expense.

When such a contract is made, it will no doubt have a legal effect according to the terms of it. And when such stipulations become frequent, and in general use, they may, as the stipulations of policies of insurance have, become the foundations of general rules applicable to them, and have

Weld
*vs.*
Hadley.

their effect, though not expressly inserted in the written contract.

There is no principle of equity in the case, to give the plaintiff a property in the leather. There is no equity in his claim.

The leather was tendered to him according to the contract which he had made with the defendant. *It was tendered at a proper time and place. The plaintiff had time and opportunity to examine the leather himself, or by any agent whom he chose to employ for that purpose—but he refused it.* Having refused it under all these circumstances, (and these circumstances did exist, or the tender could not have been adjudged valid;) having compelled *Hadley* to establish the validity of the tender, and defend himself, at enormous expense, against the attempt of the plaintiff to turn the contract for leather into a contract for money—what principle of equity is that, which will allow the plaintiff, after all these proceedings, and more than four years after the tender, to set up for the first time a claim of property in the leather?

A quantity of leather was due to him. The debtor did all he could to pay it. He offered the pay ; but the creditor would not have it. He chose rather to let the defendant be discharged by law, without receiving his pay. In all this he acted voluntarily and wilfully. Under such circumstances there is no more equity in his claim than there would be if he had accepted the leather when tendered, afterwards given it to the defendant, and then brought this action of trover for it.

He might, if he pleased, have given the debtor a release of the debt by writing, under his hand and seal ; and equity might as well give him the leather afterwards, as when he has voluntarily and wilfully refused it when lawfully tendered to him, and thereby permitted the debt to be released by the operation of law, without payment.

The debtor, *Hadley*, did all that he was under any legal or moral obligation to do ; all that law, equity or reason required

him to. He did all but compel *Weld* to accept the leather, and that he could not do. If after all this *Weld* has lost the debt, and has no property in the leather, it is his own folly. He has lost nothing but what he wilfully refused to have when it was his right and duty to accept it.

*J. Bell* for the plaintiff. We shall consider,

1st. The effect of a legal, valid tender on the contract between the parties.

2d. The effect of a legal and valid tender on the right of property, or ownership in the things tendered.

1st. The effect of a tender on the contract.

It is laid down in 6 *G. Bac.* 456, " that a tender by one " party of paying a debt, or performing a duty, and a refusal " by the other to accept thereof, do in some cases amount to " a payment of the debt, or a performance of the duty—but " that the discharge or performance in such cases are acciden- " tal, and not necessary consequences of the tender and re- " fusal—the debt or duty being discharged ; because the " cases seem so peculiarly circumstanced that there was not, " after the tender and refusal, any remedy to enforce the pay- " ment of the debts or the performance of the duties."

This effect of a tender and refusal will, it is apprehended, be found, on an attentive perusal of the cases and authorities cited in illustration of the principle, to apply to all cases of a tender correctly made, of cumbersome and perishable articles.

But in this respect the authorities all shew a material and manifest distinction betweeen the effect of a tender of *money*, and a tender of *specifick articles*.

In the former case, the party who makes the tender, is bound *at all times* to keep it good ; that is, to have the money at all times ready for the party to whom the tender is made. The debt and duty is not in this case discharged *by the mere acts of tender and refusal*. A demand of the money at any time after, and a neglect or refusal to pay, destroys its whole effect ; and even a plea of tender, without an actual *profert in curia* of the money tendered, is at-

tended with the same consequences, and the plaintiff may sign judgment.—6 *G. Bac.*—*Sugden.*—1 *Strange* 638.—1 *Saund.* 33, *n.* 2.

But a tender of cumbersome and perishable articles is otherwise. When made conformable to law and the terms and conditions of the contract, it is of itself, without any *further* act or care of the party, a discharge forever of all recovery on the contract itself. 2 *Swift Sys.* 404.—3 *John. Cas.* 243.—8 *John. Rep.* 474.

The party who makes such tender is not bound to keep it good, as in the case of money—nor is he obliged, when compelled to plead it in bar to an action on the contract, to plead it as in the case of money with a *profert in curia* of the articles tendered. 6 *G. Bac., Tender.*

The distinction between these cases seems principally to consist in a *direct* and *immediate*—or only in a *future* and *conditional, discharge* of the contract.

In the case of money, acts *subsequent* to the act of tender are necessary on the part of the person making it. In the case of specifick articles, *the tender itself,* correctly made, without any *further* act, is the *discharge.*

But the *final* effect and operation is or *may* be in *both* cases the *same*—it may in both cases *ultimately* become *equivalent to payment or performance*—it may in *both cases*, when at first correctly made, and *in the case of money* kept good and properly pleaded, amount to a *final* discharge of all damages for a breach, and a *final* bar to all remedies for a non-performance of the contract itself.

2d. The effect of a tender on the right of property or ownership in the thing tendered.

It is a very natural inference, from the doctrine "that a tender and refusal discharges the contract, and is equivalent to payment"—that in all cases *when that effect takes place,* the *right* of *property* in the money or thing tendered is transferred to the party to whom the tender is made, and whose debt is thus discharged.

It is repugnant to any principle of right and justice to say that a man shall *pay* his *debt* and *discharge* his *contract*, and still retain his *right of ownership in the thing that paid it.* If such be the law, it is obviously the result of some artificial system, in opposition to natural right, and dependant on the authority, not of *reason*, but of *names* and *decisions alone* for support.

It is, therefore, incumbent on the advocates of such a doctrine to make out a strong and clear case from precedents and authorities, to counterbalance a doctrine so founded in natural right, and justify a departure from so plain and obvious a rule.

But as the decision of this point is in effect the decision of this cause, and as there is at least some *apparent* if not *real* conflict in the authorities relating to it, we shall consider—

1st. Its operation on the money tendered.

2d. Its operation on the specifick articles tendered.

It has already been observed that in the case of a tender of money, as the debt or duty is not discharged by the *mere act of tender*, it must always be pleaded with a *profert in curia*, and the money actually brought into court, or its whole effect is destroyed and the plaintiff may sign judgment. 6 *G. Bac.* 465.—1 *Strange* 638.—8 *Mass. Rep.* 261.

This doctrine is well settled. It is only necessary, therefore, to enquire what disposition the law makes of the money after it is thus placed under the controul and custody of the court.

The general law is, that " if the money or other thing which has been tendered be upon pleading the tender brought into court, the plaintiff is entitled thereto, although he should be afterwards nonsuited, or there should be a verdict against him." 6 *G. Bac.* 465.—2 *Bos. & Pul.* 392.—2 *Term Rep.* 645.—8 *Mass. Rep.* 261.

This doctrine is founded on the plain and obvious ground, that the defendant by the tender has admitted the debt to the extent of the sum tendered.

But it is said by lord *Coke*, in his *Commentaries*, 207, *a.*, "that if the defendant plead the tender and refusal, and pay the money into court, and the plaintiff will not then receive it, but takes issue on the tender, and the same be found against him, he hath lost the money forever."

The authority of lord *Coke* is unquestionably great; but the mere dictum of any man, however venerable among the sages of the law, when, in the language of Mr. Justice *Buller*, " it is unsupported by authority and contradicted by reason," will not, we trust, form the rule of decision in this court. In such case it is allowable to say, ' *Amicus Platoni sed amicus veritati.*'

When the principles on which any doctrine of the law is supposed to be grounded, are found on examination to be not only not clearly right, but manifestly wrong, it would be indecorous to suppose such doctrine to receive any countenance whatever from the court.

Take then the case under consideration, unembarrassed by authorities either way, and what does it present?

The law has defined with considerable accuracy the circumstances necessary to constitute a legal and valid tender.

These circumstances are a combination of *time, place, quantity, quality,* and *manner*, not unfrequently presenting a question of no inconsiderable difficulty to determine whether the tender is conformable to law or not.

Is there any thing in all this that calls for the application of lord *Coke's vindictive* rule, that if the plaintiff should happen to doubt upon *any* or *all* the circumstances necessary to make the tender legal and valid, he must take the opinion of a jury at the *peril* of his *debt?*

But however reasonable or plausible it might appear, to punish a creditor by the loss of his debt, who refused to receive a tender of *money*, as that is an article of a legal and ascertained value, all the alleviations of the hardship and absurdity of the rule will at once vanish when we attempt to apply it to a *tender* of *specifick articles*.

Weld
*vs.*
Hadley.

In this case it does not unfrequently happen that *no one thing is certain*—the *time*, the *place*, the *quantity*, the *quality*, the *manner* and *value*, are *all* circumstances open to dispute, and some of them not unfrequently of difficult determination.

To say, then, that the plaintiff under such circumstances shall be obliged to take the opinion of a jury of his country at the *peril* of his *debt*, is to lay down a rule uncalled for by the necessity of the case, and unsupported by any reciprocal principle of reason or justice. At the *peril* of the *costs*, we agree he must—but there his peril ends.

If, then, this question were *res integra*, the rule of decision would be obvious as light. In natural justice and equity it is manifestly clear *that the thing which pays the debt and discharges the contract should belong to him whose debt is paid and whose contract is discharged;* and the decided cases, we apprehend, so far as they are consistent with themselves, when rightly understood not only furnish no objection to, but strongly corroborate, this position.

The authorities placed in the margin, of lord *Coke's Commentaries,* in support of the general doctrine he there advances, (the concluding part only of which is quoted above) are *Roll. Abr. Siderfin,* the *Year Books* in the time of Edward the 3d and 4th, and Henry the 6th, and *Henry Peytoe's case, the 9th Vol. of his own Reports.* These references we have had no means of particularly examining, except the last, which essentially fails in supporting that portion of the doctrine of the text which we have cited above. The resolution in *Peytoe's* case was expressly founded on the decisions in the *Year Book* in the time of Henry 6th, cited above, and was decided on the ground that the defeazance on which the tender was made was merely collateral to the obligation, and not parcel of it—in which case, according to (4) *Co. Lit.* 307, *a.* lord *Coke* himself,(4) it is not necessary to plead the tender with a *profert in curia,* and actually bring the money into court.

As to the other references, *Rolle* is cited on both sides of the question, and *Dyer* also, in opposition to the doctrine of the text.

But the same doctrine is cited from lord *Coke, in* 6 *G. Bac.* 466, *a.,* (*Bacon* cites *Salk.* 597, which does not support the doctrine) and the *reason* of the decision is there given. It is always a fortunate circumstance, when erroneous principles are attempted to be supported by the mere weight and authority of *names,* to find the *reasons* of the decisions recorded with the *decisions* themselves. The poison is then accompanied with its appropriate antidote. The reason given in *Bacon* is "that it is at the plaintiff's peril to take an issue by which his *refusal* has become matter of record."— 6 *G. Bac.* 466.

Now it will be found, we apprehend, on an attentive examination of the precedents of pleas and replications in cases of tender, that the *plaintiff's refusal* is as much a matter of record in *all other cases* when an issue in fact or law is joined, as when he takes issue on the tender itself. The *refusal* is in no case in issue—it is not *by itself* an issuable fact—and were an issue joined on it *alone,* and a verdict found either way, no judgment could be rendered on it. The *tender itself* seems to *imply a refusal ;* for if it did not, it would be no longer *a tender,* but *payment.* The plea, it is true, states a tender and refusal, but the replication in no case traverses the refusal. It is only admitted because not traversed, and so are all the precedents we have examined.

Besides, there are cases where the tender is good and effectual, even to the discharge of the contract, when there never was any thing but a *constructive* refusal. Such are all the cases of a tender of specifick articles at a time and place certain, where the creditor, from any cause whatever, does not attend.

The tender at the time and place is as complete a discharge of the contract, as if the creditor were personally present at the time and place, and actually refused(5.)

(5) 6 *G. Bac.* 459.

The discharge of the debtor in this, as in all other cases, goes on the broad ground that he has done all incumbent on him to fulfil his contract ; and in such case the rule of law is that he shall suffer no injury by the default or negligence of the other party. It is, therefore, wisely provided that an *offer* to perform *the very act* he had by his contract stipulated to perform, is *equivalent to a performance.* He shall be *as well* as if he had actually performed, but *not better.* He shall be *as well ;* because his contract is discharged by a tender of the articles by which he contracted to discharge it. *But he shall never be better, by discharging his contract and still retaining his right of property in the articles that discharged it.*

The reason, then, on which the doctrine cited from lord *Coke* is supposed to depend (and it is difficult to conceive of any other) will be found on examination to apply to *all other* cases where a tender is pleaded and an issue joined, as well as where the issue is taken on the tender itself.

When, for instance, after a plea of tender, the replication states a writ sued out previous to the tender—or a demand subsequent—or when the plaintiff demurs to the plea, for any cause whatever, the plaintiff's refusal is as much admitted on the record as when he takes an issue on the tender itself.

But in all these cases it is well settled, and by modern authorities, that the plaintiff, notwithstanding the issues are found against him, shall nevertheless have the money. *Le Grew* vs. *Cooke,* 1 *Bos. & Pul.* 332.—*Cox* vs. *Robinson,* 2 *Strange* 1027.—*Claflin* vs. *Hawes,* 8 *Mass. Rep.* 261.— *Elliott* vs. *Callow,* 1 *Salk.* 597.—*Sicker* vs. *Kitchurman,* *Barnes* 284.—1 *Bos. & Pul.* 392.—1 *Term Rep.* 464.—2 *Term Rep.* 645.

The truth seems to be, that the doctrine, as laid down by lord *Coke,* however it may have *formerly* been in *England,* is not law in that country at the present day.

This is plainly to be inferred from the very respectable authority of Mr. Sergeant *Williams,* in his second note to the case of *Binks* vs. *Trippet* (6.) He there states " that an idea seemed *once* to prevail that if the plaintiff did not *admit* the tender, he could not take the money out of court,—and then cites the strong case of *Le Grew* vs. *Cooke,* to shew that this notion is not founded in law.

(6) 1 *Saund.* 33.

The case of *Le Grew* vs. *Cooke* was an action of assumpsit. The defendant pleaded as to all but 30*l.* non assumpsit, and as to that sum a tender, and brought the money into court. The plaintiff replied an original sued out on a particular day, and that the money was not tendered before that day—but took the money out of court : a rule having been obtained, calling on the plaintiff to shew cause why the replication to the plea of tender should not be struck out, on the ground of the plaintiff's having admitted the tender by taking the money out of court. After argument, *Buller,* J. who delivered the opinion of the court, said—

" This is a point of practice which I had thought as clearly settled as any point ever was, and I am much mistaken if it has not more than once been before the court of King's Bench." " *It is perfectly certain that whatever may become of this action, the plaintiff will be entitled to the money tendered.*" " It being once admitted that the plaintiff will be entitled to the money tendered *at all events,* this application must fall to the ground. The reason given in *Barnes* against allowing the plaintiff to take the money out of court—namely, that the *replication* to the tender is a *refusal* to accept the money, is *absurd.* That case is, therefore, *felo de se,* and the present application rests upon no other foundation than the opinion of a writer, who has indeed in general reported the practice of the court with accuracy, but whose assertion in this case is unsupported by authority and contradicted by reason."

Upon the whole, the conclusion seems warranted by sound construction of the principles and authorities cited and examined, that when a tender of money is at first properly

made—kept good—pleaded, and the money brought into court—it is a discharge of all damages on the contract, and *that in all such cases, whatever may become of the particular action, the plaintiff is entitled to the money tendered.*

2d. It only, therefore, remains to apply these principles to the case of a tender of specifick articles.

The general principle, as settled by all the authorities in the case of a tender on a contract for the payment of *money,* is that the tender is no bar to an action on the contract, unless when pleaded the money itself is actually paid into court. The action is *then in effect* discharged, and as a *consequence* thereof the plaintiff is *entitled* to the *money.* This principle runs through all the cases that are consistent with themselves, and it hence results that the *debtor's discharge from his contract, and the creditor's right to the money, are correlative to each other, and that the one never takes place without the other.*

The doctrine for which we contend in its application to a tender of specifick articles, is founded on the same reciprocal principle. It is, as has already been observed, that a tender of cumbersome and perishable articles, when made conformable to law and the terms and conditions of the contract, is *of itself, without any further act of the party, a discharge forever from the contract*—that the *property* in the thing tendered *vests* by such tender in the creditor—that the debtor may *then,* if he so choose, abandon the articles tendered, and if they are in consequence injured or destroyed, the loss falls not on him.

But if from any cause whatever he elects not to abandon, but retains the possession of the articles tendered, the relation of the parties then changes, and instead of *creditor* and *debtor* on the *contract,* becomes that of *bailor* and *bailee* of the *articles tendered :* That the creditor is then bound to take his remedy on the *property tendered,* and *into whosoever's possession* this property may come, whether into that of the *former debtor,* or *any other person,* this

person holds it for the creditor, and at his risk, under the ordinary responsibility of a bailer by deposit—and is entitled to an equitable and reasonable compensation for his trouble and expense in its care and preservation.—3 *John. R.* 474. —3 *John. Cas.* 243.—2 *Swift Syst.* 404.

Such is the doctrine for which we contend, in perfect analogy with the law in relation to a tender of money—founded in a perfect reciprocity of rights and duties, and *doing equal and exact justice to both parties.*

But we do not rest this doctrine *merely* on its own intrinsick and perfect equity—on its fairness to all parties, and its injury to none—although, in the language of a learned judge in one of our sister states, " when principles are strong, it is sufficient that there have been no decisions to the contrary." We are happy to have it in our power to call in the aid of authority to the assistance of reason—of authority, too, not adapted to other times or other countries, but the determinations of enlightened judicial tribunals in our own times and in our own country.

The question under consideration, so far as we have been able to ascertain, has not been the subject of judicial examination in any of the states except *Connecticut* and *New-York.*

In these states it has been judicially examined, and we apprehend settled in perfect coincidence with the principles already mentioned.

The case of *Nicholas* vs. *Whiting* was decided in the supreme court of *Connecticut,* and is reported in 1 *Root,* 448, and also by *Swift,* in his System of the Laws of *Connecticut,* 1 *Vol.* 404.

It was in this case decided, " that when the contract is to pay articles of a certain amount, of a general description, as articles of shop work, &c. it is necessary, in the plea of tender, to point out, and of course in the tender to set out, the particulars articles, whereby they can be known and distinguished from others—for if the tender be good, it is a bar

to an action on the contract, and the articles vest in the person to whom tendered, and they ought to be identified, that he may know what articles belong to him."

The same principle seems to have been very clearly admitted by the supreme court of *New-York*, in their reasoning in the case of *Coit & al.* vs. *Hauston*,(7) in the decision of the case of *Newton* vs. *Galbraith* (8.)

(7) 3 *John. Cas.* 243.

(8) 5 *John. Rep.* 119.

(9) 8 *John. Rep.* 474.

But in the more recent case of *Slingerland* vs. *Morse & al.*, before cited, (9) the supreme court of *New-York* seem to have left no room to doubt what their opinion is upon the question under consideration. They directly say, "that a tender of cumbersome specifick articles correctly made, is a complete bar to a suit on the contract," and that in such case "the creditor must resort to the specifick articles tendered, and that the person in whose possession they are holds them as his bailer and at his risk."

This opinion goes the whole length of the present case; and from the deservedly high reputation of the court that gave it, and the very cautious manner in which its decisions are uniformly given and reported, we consider it entitled to very great respect and consideration.

The law of consignation, referred to by the court in this case, in illustration of the effect of a tender of specifick articles, is thus stated by *Pothier*, in his Treatise on Contracts—"the greatest portion of which admirable treatise," in the language of the celebrated Sir *William Jones*, "is law at *Westminster* as well as *Orleans*."

"The effect of the consignation," says *Pothier*, in No. 545, "is, that if it be judged valid, the debtor is holden to "have been discharged by it—and although, *subtilitate juris*, "he remains proprietor of the coins consigned, till they be "taken by the creditor, they cease to be at his risk, and lie "at the creditor's—who, from being the creditor of a sum "of money, as he was before, is now become creditor of "those coins, *tanquam certorum corporum*, and he is a cred- "itor no longer of his debtor, who has been fully discharged

" by the consignation, but he is a creditor of the consignee,
" who by the consignation obliges himself, *tanquam ex quasi*
" *contractu*, to restore the coins to the creditor, if the con-
" signation be judged valid, or to the debtor who consigned
" them, if it be declared null."

Such is the effect of a consignation, as laid down by *Po-thier*. Its analogy to the effect of a tender, as stated above,
is sufficiently obvious.

The doctrine of abandonment in insurance cases, as stated
by *Marshall*, in his Treatise on Insurances, furnishes another
illustration of the principle for which we contend, and an
undoubted authority to shew that property may and does
sometimes pass by operation of law, not only without, but
even against the consent of the party in whom it vests, even
after his express refusal.

It is said in his treatise to be well settled, " that by the
" abandonment of the ship the insurer becomes the legal
" owner—is liable for all her outgoings, and is entitled to
" all her future earnings, and this whether the abandonment
" be accepted at the time it is made, or refused, if made in
" due time and for sufficient cause"(10.)    And in the case of (10) *Marshall* 602.
the *United Insurance Company* vs. *Scott*, chief justice *Kent*
said—" the very essence of abandonment consists in a ces-
sion, and amounts to a complete transfer of the property"(11.) (11) 1 *John. Rep.* 106, 114,
From all this it is manifest that the effect and operation 249, 592.—2 *Caines' Rep.*
of a tender of specifick articles, as stated above, is not a sol- 280.—1 *Caines' Rep.* 292.—
itary or anomalous case in the law.    It is just and equitable 5 *John. Rep.* 310.—2 *Mass.*
in itself; accords with the general principles of other cases, *Rep.* 39.— 3 *Mass. Rep.*
and is supported not only by sound reason but by respectable 563.—4 *Cranch Rep.* 29, 31. *n.*
authority. 202.

The opinion of the court was delivered by

RICHARDSON, C. J.    The plaintiff cannot prevail in this
action, unless he has shewn a legal title to the leather which
is the subject of contest, vested in himself.    The question,
then, to be decided is, whether upon the tender of the leather
by the defendant, in pursuance of his contract, the property

Weld
vs.
Hadley.

vested in the plaintiff, notwithstanding his refusal to accept it. It therefore becomes necessary to look into the nature and consequences of a tender and refusal.

In some cases the debt, or duty, is discharged by a tender and refusal, and in other cases it is not.

Thus a tender and refusal is not a discharge of a bond with a condition for the payment of money; nor of any promise to pay money; but the duty remains, and he who pleads a tender in such cases must allege that he is still ready to pay and bring the money into court. *Bacon's Ab.* '*Tender*,' *F.*—1 *Co. Lit.* 207.—9 *Co.* 79. *Peytoe's case.*

When the debt, or duty, is not discharged by a tender and refusal, it is very clear that no title to the particular money tendered vests in him to whom the tender is made. And it was formerly held, that if the plaintiff refused the money when brought into court, and took issue upon the tender, the defendant might take the money out of court, and if the issue were found against the plaintiff, he lost the money forever(12.) Although the law is now altered in this respect, and the defendant is not allowed to take the money out of court when the plaintiff denies the tender, yet the present practice is by no means founded upon the supposition that the money vests in the plaintiff upon the tender(13.) The old doctrine was founded upon the Year Book of 21 E. 4, 25, where the case was this: In debt upon a bond, with a condition for the payment of 40*l.*, on a particular day, and a like sum on divers days afterwards, the defendant pleaded payment of all the sums on the several days, except the last day, and as to that he alleged that he paid to the plaintiff on the last day 20*l.* and tendered 20*l.* more, which the plaintiff refused, and said that he had always been ready, and still was, to pay the 20*l.*, and brought the money into court. The plaintiff refused to receive the money, and took issue on the tender. The court said that the defendant was entitled to take his money out of court, and it was delivered to him. The reporter says, "now thus the intent of the

(12) *Co. Litt.* 207.—2 *Roll. Ab.* 524.—*Cro. Jac.* 126.

(13) 1 *Bos. & Pul.* 332, *Le Grew* vs. *Cook.* —1 *Tidd's Prac.* 566.—*Law's Pl. in Assumpsit* 470.

" plaintiff is by this issue to cause the whole obligation to " be forfeited ; and it seems that if this be found against him " he shall never have the 20*l.* ; for, since it is delivered to " the defendant again, there is no way to make him pay it. " And also the plaintiff has made his refusal a matter of " record, and took the issue at his peril." This last remark seems to have given rise to an opinion that the defendant was allowed to take the money out of court, because the replication to the plea was a refusal of record to accept the money(14.) This reason *Buller, J.,* in *LeGrew* vs. *Cook,* very justly considers as absurd. The true reason was this : In ancient times, when the condition of an obligation was broken, the obligee was entitled to recover the whole penalty, however small the damages sustained might have been ; and the courts of common law had no power to relieve the defendant. If, therefore, the plaintiff had been permitted to take the money tendered, and also to take issue on the tender, if the issue was found in his favour, he would have had not only the money tendered, but the whole penalty of the bond besides ; which would certainly have been unreasonable. But now in actions of assumpsit, &c. and even in debt upon bond which can be chancered, there seems to be no reason why the plaintiff should not be allowed to take the money tendered in court, and also traverse the tender ; because, even if the issue be found for him, he can recover no more than what is in justice due to him.

(14) *Bacon's Ab. Tender F. pl.* 11.—*Barnes* 358, *Hill* vs. *Williams.*

The defendant never was, nor is he now compelled to tender the money in court because any title to the money itself is vested in the plaintiff, but because the rule of law will not permit the defendant to be discharged from the debt till he has lodged the money in court for the use of the plaintiff. This argument is strongly fortified by the practice of permitting defendants to bring money into court upon the common rule, which is in all respects equivalent to a tender, and is substituted in the place of it.

But there are many cases in which a tender and refusal amounts to a discharge of the obligation.

Thus if a man make a single bond, or acknowledges a recognizance, and afterwards make a defeazance for the payment of a less sum at a day certain, if the less sum be tendered at the day the bond or recognizance is forever discharged, and the obligee or conusee has no remedy at law to recover the sum tendered(15.) As the sum tendered is collateral to the obligation, and not parcel of it, the law does not compel the obligor to bring it into court in the suit upon the obligation, but discharges him upon his shewing a tender ; and no action can be maintained on the defeazance ; the obligee is, therefore, without remedy. *Bac. Ab., Tender, F, pl. 5 & pl. 4.*

(15) 1 *Co. Litt.* 207.—2 *Saunders* 48, *Fowell* vs. *Forrest, n.* 1.

So if A, without any debt or duty preceding, enfeoff B of land, with condition for the payment of 100*l.* to B in nature of a gratuity, and A tender the money, and B refuse it, the land is discharged forever. Because the 100*l.* is collateral to the land, and B has forever lost the money, because he has no other remedy to recover it. *Bac. Ab., Tender, F, pl. 3.—Co. Litt.* 209.

But if A borrow of B 100*l.*, and after morgages land to B for the payment thereof, if A tenders the money, and B refuses it, A may enter into the land, and the bond is freed forever of the condition ; but the debt remains, and may be recovered by action of debt. *Co. Litt.* 209.

In none of these cases is the obligation discharged, because any title to the money tendered vests in the obligee upon the tender ; for if it did not, he surely might have some remedy to recover it, and would not be said to have lost the money forever. Besides, in the case of a mortgage for a precedent debt, if the money tendered vest in the mortgagee when tendered—not only the land, but the precedent debt, ought to be considered as discharged.

In an obligation with condition for the delivery of specifick articles, a tender and refusal of the articles is a perpetual discharge. Thus, if a man make an obligation of 100*l.*, with condition for the delivery of corn, timber, &c., or for

the performance of an award, or the doing of any act, &c., this is collateral to the obligation, and a tender and refusal is a perpetual bar. *Co. Litt.* 207.—9 *Co.* 79. H, *Peytoe's case.*

So if a man be bound in 200 quarters of wheat for delivery of 100 quarters of wheat, if the obligor tender at the day the 100 quarters, he shall not plead assumpsit, because, albeit it be parcel of the condition, yet they be *bona peritura,* and it is a charge for the obligor to keep them (16.) From a remark of *Coke* upon this example of an obligation for the delivery of wheat, it is very clear that he was of opinion that the obligee had no remedy to recover the wheat tendered. For he says : " and the reason wherefore in the case of " an obligation for the payment of money, the sum mention- " ed in the condition is not lost by the tender and refusal, is " not only for that it is a duty and parcel of the obligation, " *and therefore* is not only lost by the tender and refusal, but " also for that the obligee hath remedy by law for the same." This remark has no point whatever, unless the wheat is to be considered as lost by the tender and refusal.

(16) *Co. Litt.* 207.

In the case of an obligation or contract for the delivery of specifick articles, &c., the duty is not discharged by a tender or refusal, *because* any title to the thing tendered vests in him who refuses it ; for in that case the condition or contract must be considered as performed, and should be so pleaded, but *because* the defendant, having done all in his power to perform the condition or contract, and having been prevented by the fault of the other party, the non-performance is by law excused. This is evident from many cases that are to be found in the books.

Thus in *Robbins* vs. *Luce* (17.) To an action on a contract to deliver 27 oak barrels at the defendant's house on a particular day, it was held to be a good bar that the defendant had the barrels ready at the time and place, and no one came on the part of the plaintiff to receive them. In this case it will hardly be contended that the barrels became the property of the plaintiff merely because they were ready.

(17.) 4 *Mass. Rep.* 474.

So in the case of *Slingerland* vs. *Morse*,(18) which was an action on a promise to deliver to the plaintiff goods which he had bailed to the defendant, a tender and refusal was held (18) 8 *John.* 474. to be a good bar. Yet it is very clear that no property vested in the plaintiff upon the tender, the property being in him before.

In the case of *Wilt & Green* vs. *Ogden*,(19) which was (19) 13 *Johnson's R.* 56. assumpsit on a promise to pay the plaintiffs 270 dollars, in drawing plaster from *Ithica* to *Oswego*, it was held to be a good defence that the defendant went to the place and offered to draw the plaster, but the plaintiffs had no plaster there. It was a good excuse for the non-performance of the contract. It was also held that the plaintiffs could not recover back the consideration of the promise paid. They were, therefore, without remedy.

The case of *Boynton* vs. *Emerson*, decided in this court in the county of *Hillsborough*, October term, 1796, is a direct authority upon this point. It was trover for certain neat cattle. It appeared in evidence that one *P. Wright* had by note contracted to pay *Boynton* a certain sum in neat cattle, to be delivered at a certain time and place in *Stoddard*, and to be appraised by indifferent men. At the time and place mentioned in the note, *Wright* attended with the cattle, and had them appraised agreeably to the contract. But *Boynton* did not attend to receive them, and *Wright* turned them into the highway. This was in December, 1791. *Boynton* lived in *Massachusetts*, and *Emerson*, to prevent the cattle from starving, took them into his possession and fed them—and gave *Boynton* notice that he had the cattle, and requested him to send and take them.— This *Boynton* refused to do, but commenced an action against *Wright* upon the contract. This action, however, he afterwards abandoned and became nonsuit. After this, in 1795, *Boynton* demanded the cattle of *Emerson*, who refused to deliver them without pay for their keeping. *Boynton* refused to pay any thing for keeping, and brought the

suit against *Emerson.* The court were of opinion that *Boynton* had no property in the cattle, and could not maintain the action.

On a former trial of the cause now before us, in 1815, the court (*Livermore* and *Ellis*, justices) after mature consideration were of opinion that *Weld* acquired no property in the leather tendered.

It is believed that it may with great safety be affirmed that there is nothing in the *English* books nor in the decisions of our own courts that gives the least countenance to the supposition that when specifick articles are tendered and refused, the property still passes.

It seems, however, that a different opinion formerly prevailed in *Connecticut*(20). But it seems to have been formed without due consideration, and stands wholly unsupported by authority. Nor are we able to learn, either from *Swift* or *Root*, the grounds of the decision.

It also seems, from some remarks made by individual judges in the case of *Slingerland* vs. *Morse*,(21) and in *Coit & al.* vs. *Houston*,(22) that an opinion is entertained in *New-York* that property may pass upon a tender and refusal. But in neither of those cases was that the point before the court; and although we entertain the highest respect for the talents and legal learning of the judges who seem to have intimated such an opinion, we cannot rely upon their *obiter dicta* on points not before them, in opposition to the whole current of authorities from the earliest times.

It has also been contended, on the part of the plaintiff, that there is a strong analogy between this case and the case of an abandonment upon a policy of insurance, when the property often vests in the underwriter notwithstanding his refusal to accept the abandonment. But we think that the answer which the defendant's counsel has given to this argument is decisive, and that the vesting of property in case of an abandonment depends upon circumstances peculiar to that species of contract, and that the supposed analogy fails altogether.

(20) 1 *Root* 55 & 443.
1 *Swift's Syst.* 404.

(21) 8 *Johns.* 474.

(22) 3 *John. Cases* 242.

Thus it seems that the doctrine for which the plaintiff contends is not only wholly unsupported by any adjudged case, which is entitled to have any weight in the decision, but stands contradicted by the whole current of authorities from the earliest to the present time. The principle to be deduced from adjudged cases, of the most unquestionable authority, is, undoubtedly, that a tender and refusal of specifick articles transfers no property.

Nor does this principle rest upon reasons in any degree unsatisfactory, nor can it prejudice any party to whom a tender is made, provided he takes care to be well instructed as to his rights and duties, and to act with good faith. In the present case, when the leather was tendered, the plaintiff had a right to take a reasonable time to examine the tender, and to ascertain the quality and quantity of the leather tendered. If upon examination he found the tender sufficient, it was his duty to have accepted it; but if, on the contrary, he found it deficient, he had a right to reject it, and demand of the defendant a fulfilment of the contract according to its terms; but as on the one hand the defendant was bound at his peril to make a sufficient tender, so on the other hand the plaintiff refused the tender, if sufficient, at his own peril. This was no hardship upon the plaintiff. He could as easily ascertain whether the tender was sufficient as the defendant could. The advantage which the defendant has in being discharged from his obligation, and still keeping the leather, is merely accidental. When the plaintiff wrongfully rejected the leather, the defendant might have left it in the street, and have suffered it to have been lost or destroyed, and in so doing he would have done no injury to the plaintiff; but the law did not compel him to do this, which would have been an idle waste of property, but permitted him to keep it; nor did the law impose the duty upon the defendant of being at the trouble and expense of keeping it for the use of the plaintiff, who had refused it, but permitted him to have it to his own use. And there is no reason why the plaintiff should now recover the value of

the leather from the defendant, any more than there would have been had the defendant left the leather in the street, and permitted it to be destroyed, as it might have been, if he had not kept possession of it. There may be more hazard in rejecting a sufficient tender, than in not making a sufficient one, because the one is done at the peril of losing the debt, the other is only at the peril of being compelled to pay the money in lieu of specifick articles. But the plaintiff has no reason to complain of this inequality, for it was his own choice to take the hazard, and he has lost his debt by his own act.

In this case the dispute between the parties seems to have been whether the quantity of leather was sufficient, and that question depended upon what was the cash price of leather. Had the plaintiff been well advised, he would not have rejected the tender at the risk of his debt, but would have received the leather and endorsed the quantity upon the note. He might then have brought an action upon the note to recover the balance, and have settled the question without incurring any hazard but that of costs. But he saw fit to take a different course. This was probably done through an innocent mistake; and if so, it was his misfortune, but cannot alter the law. However innocent the mistake may have been, he has no right to ask an indemnity from the defendant, who seems to have been in all things equally innocent. And as he chose to exact of the defendant a rigid compliance with the terms of the contract, he must not complain if the defendant now chooses to shield himself under the rigid rules of the law.

*Judgment on the verdict.*