Miles *v.* Roberts.

## MILES *v.* ROBERTS.

A witness may testify what he understood from the conversation of the parties.

A contract was made for a payment to be made in grain on a day, but without a designation of a place of delivery. The parties may subsequently agree on a place ; and they will be bound by it, though parol evidence is not admissible to prove an original agreement not inserted in the writing.

Where there was shown a subsequent agreement to fix a place of delivery, the court are not called upon to state to the jury where the place of payment would be by the original contract. If a place was agreed upon, and the defendant had then the grain there, ready to be delivered, and the plaintiff was there, saw it, and declared himself satisfied with its quantity and quality, it would be evidence of an acceptance, and of a discharge of the contract.

If a legal tender was made at the time and place of delivery agreed upon, that would discharge the contract.

An agreement of the defendant on a new consideration to carry the grain to another place and deliver it there, is not a waiver of the previous payment.

No recovery can be had on such new contract upon a count on the original contract.

In Assumpsit on appeal from a justice of the peace. The declaration contained but a single count, which was upon the following contract:

"Stark, April 6, 1850.

"For value received I promised to pay Josiah Miles, or bearer, five dollars in grain, in the month of November next, and interest. Daniel Roberts."

Upon the general issue, the plaintiff proved a demand upon the contract, and the defendant introduced evidence tending to show that he had, about the middle of November, 1850, measured out grain enough in his chamber sufficient, and put it by itself, for the specific purpose of paying this note or contract, and had notified the plaintiff of that fact; that soon after, the plaintiff came and examined the grain, and expressed himself satisfied with it; that the defendant there tendered the grain, and that the plaintiff accepted it, and was requested by the defendant to take it away, but had never done so.

The defendant offered, as part of such evidence, the deposition of C. Cole, in which the witness states that some time in the month of November, 1850, he was at the defendant's house, and heard a conversation between the parties to this suit, and upon being asked to state the conversation, he answered as follows: "I understood from their conversation that Mr. Miles held a five dollar note against Mr. Roberts, payable in grain, which was then due. I understood from the conversation that Mr. Roberts had sent for Mr. Miles to come and receive the grain, which Mr. Roberts said was now ready for him. Mr. Roberts said he understood the contract was that Mr. Miles should take the grain at his house, and asked Mr. Miles if he did not understand it so, and he said he did. Mr. Roberts then asked Mr. Miles to

go up stairs to see the grain, to see if it would answer the contract. Mr. Miles went up stairs and came down again. Mr. Roberts then asked Mr. Miles if the grain was sufficient to answer the contract. Mr. Miles said it was. Mr. Miles then asked Mr. Roberts what difference it would make with him if he did not take the grain till the first of next week. I think he said he would call and take it. Mr. Roberts objected to that, and said that the mice were destroying it, and he would rather he would take it away."

The plaintiff objected to the first part of this answer, on the ground that the witness did not state the conversation, but only his understanding of it. To the second part of the answer the plaintiff objected, on the ground that evidence as to the place of payment of this contract was incompetent. But the court admitted the evidence, subject to exception.

It appeared that the plaintiff had left this note or contract with a Mr. Haywood, of Northumberland, about the time it became due, or shortly before, in some dealings between them, though it did not appear that said Haywood had any lien or claim upon said contract. There was also evidence tending to show that about the middle of December, 1850, the defendant called at the plaintiff's house for the purpose of procuring the plaintiff's son to go to his, the defendant's house, and stay a few days and do chores, while the defendant went out to Northumberland. The plaintiff consented that his son might go if the defendant would carry that grain out to Mr. Haywood, at Northumberland, to pay that note, and the defendant said he would carry it out; and the plaintiff's son did go to the defendant's and took care of his stock at the barn, and chopped wood at the door, during the defendant's absence, according to agreement, but that the defendant did not carry out the grain.

The plaintiff asked the court to instruct the jury, first, that if the defendant agreed to carry to Mr. Haywood the grain which was payable on this note, and to pay the same in that way on the note, it was a waiver of any prior payment of the same note.

Miles *v.* Roberts.

That the place of payment of this note was at the residence of the payee ; that this is the legal construction of the note ; which the court declined to do, but instructed the jury as follows :

1. That if they should find that at the time of the alleged tender the parties agreed that the defendant's house was or should be the place of payment, then a tender made at that place, if sufficient in other respects, would .be good, whatever the legal construction of the contract might have been as to the place of payment, and whether the plaintiff was induced to assent to that arrangement in consequence of any original misunderstanding to that effect, when the contract was made, or any subsequent agreement or arrangement.

2. That if the place of payment was thus agreed upon, and the defendant had the articles specified in the contract ready to be delivered at the place of payment, in the month of November, 1850, and notified the plaintiff of that fact, and requested him to take the grain away, and kept the grain in readiness for delivery at said place through said month of November, and long enough to give the plaintiff a reasonable time after such notice to take the same away, this would constitute a sufficient tender, and discharge the contract.

3. That if a legal tender was made of the grain specified in the contract, at the time and place, this would alike discharge the contract, whether the plaintiff accepted it or refused to accept it.

4. That if there was any new promise, founded upon any new consideration, as in this case, if any was made, the plaintiff could not recover upon that new contract in this suit, but should have declared specially upon such new contract.

The jury returned a verdict for the defendant, which the plaintiff moves the court to set aside for supposed error in the rulings of the court, and in the instructions to the jury, and because the court did not instruct the jury as requested by the plaintiff.

*Flint & Bryant,* for the plaintiff.

It was not competent for the witness to state what he understood from their conversation.

The legal construction of this note is that the grain was payable at the residence of the payee, the plaintiff. The parties are farmers and live about a mile and a half apart, in the town of Stark. *Currier* v. *Currier,* 2 N. H. 75.

It was not competent to introduce parol evidence — the admission of the plaintiff — as to his understanding of the meaning of the note, to contradict the legal construction of the note, it being a written instrument. A contradiction of the natural and legal meaning of a writing is a contradiction of the writing itself.

The defendant's contract to pay this note to Mr. Haywood was a waiver of his right to insist upon any other mode of payment. *Robinson* v. *Batchelder,* 4 N. H. 40.

*G. C. Williams,* for the defendant.

The objection to the deposition is that the witness stated, not the conversation, but his understanding of it. The witness states what he understood from the conversation of the parties. That is, what he understood them in substance to say were facts, to wit.: That Miles held a note against Roberts, payable in grain, which was then due, and that Roberts had sent for Miles to come and receive the grain. These, in fact, were merely introductory and preliminary to what follows, in which the witness states what the parties did say, &c., which make up the grounds of the defence. But it seems well settled that it is perfectly competent for the witness to state, and the jury to weigh what he understood an agreement to be, or how a fact was represented by the parties, from their conversation. *Eaton* v. *Rice,* 8 N. H. 371 ; *Maxwell* v. *Warner,* 11 N. H. 568.

The plaintiff objects that evidence of the place of performance of this contract is incompetent, and that part of the answer should not have been received. It will be noticed that that part of the deposition was not needed by the defence, because the

---

---

defendant claimed and showed that he not only measured out and set apart the grain, but that the plaintiff came and examined it, and accepted the tender.   On general principles it is competent for the parties, at any time before breach, by a new contract not in writing, either altogether to waive, dissolve or annul the former agreement, or in any manner to add to or subtract from, or vary or qualify the terms of it, and thus make a new contract, which is proved partly by the written contract and partly by the subsequent verbal terms engrafted upon it.   Chit. Con. 108, and authorities cited.   This principle is applied to a case of this sort in *Robinson* v. *Batchelder*, 4 N. H. 40, where it is settled that it may be subsequently agreed that the articles may be delivered in a place different from that in the contract.   *Bank* v. *Woodward*, 5 N. H. 99, recognizes the same principles.   Therefore, even if the place was expressly stipulated in this note, this acceptance, as proved on the part of Miles, and his expression of satisfaction thereat, would amount to a subsequent change of the terms of the contract, or waiver of that part of the stipulation.   But without regard to this, the evidence was properly admitted.   It may be a question where the contract should be performed, looking merely at the writing itself.

In relation to cumbersome articles, where no place of performance is specially designated, and where none can be inferred from the facts contained in the obligation, or from other facts, collateral and independent, which may be proved by parol, the obligee may designate any reasonable place for the delivery. *Currier* v. *Currier*, 2 N. H. 77.   If we look merely at the writing in this extreme view, then Miles was called upon and accepted of the residence of Roberts as the place of payment. *Clement* v. *Clement*, 8 N. H. 210 ; *Barker* v. *Jones*, 8 N. H. 416.

Without regard to the general construction of the contract, it is entirely competent to show by parol evidence an understanding or agreement at the time of making the contract, designating the place of delivery.   The cases in which parol evidence shall not be received, as I understand, are limited to contradict-

ing or varying the terms of a written agreement. Parol testimony may supply what is not provided for by the writing. The case of *Currier* v. *Currier*, 2 N. H. 77, seems to recognize this principle, even to the extent we ask for, where the court say that a place of payment may be inferred from other facts, collateral and independent, which may be proved by parol.

If it can be determined from such facts, why not on the same principle from direct evidence of an express and well defined understanding between the parties at the time, of the place where payment should be made. It is decided expressly, in *Wyseman* v. *Winslow*, 2 Fairf. 398, that the place of payment may be thus shown, and that case is exactly parallel to this. So it has been decided that parol evidence is admissible to show the agreement relative to the place where payment of a note was to be demanded, although the agreement did not appear on the face of the note. *Burt* v. *Bank of Metropolis*, 1 Pet. 89. Thus in any view the deposition was properly received.

As to the instructions of the court, which are excepted to : The first instruction, that if the defendant's house was agreed upon at the time of the alleged tender, and a sufficient tender was then made, it would be good, must be correct, and is nothing different from the principle in *Robinson* v. *Batchelder*, 4 N. H. 40.

The second and third instructions contain merely the law of contracts for the payment of specific articles, as given in *Weld* v. *Hadley*, 1 N. H. 295 ; *Robinson* v. *Batchelder*, 4 N. H. 40 ; *Currier* v. *Currier*, 2 N. H. 77 ; *Clement* v. *Clement*, 8 N. H. 210 ; *Barker* v. *Jones*, 8 N. H. 416.

These directions were correct enough, though not necessary to have been given in this case, because the evidence was, as stated before, not only of the defendant's having the grain ready, measured out and set apart for this specific purpose, but that the plaintiff accepted it.

The fourth instruction in reference to the new promise alleged, is sustained by the authorities and reason. If there was a sufficient tender, as claimed, then the promisee is forever dis-

charged from all the obligation which the contract imposed on him. *Robinson* v. *Batchelder*, 1 N. H. 295 ; *Currier* v. *Currier*, 2 N. H. 77.

.The defendant was wholly discharged from any liability upon the note ; but the grain having been accepted by the plaintiff, probably became the property of Miles, and remained there at his risk. It would have been otherwise had he not accepted it. *Weld* v. *Hadley*, 1 N. H. 295.

The new contract, then, amounted to nothing more than an agreement to perform some work about the grain, which Mr. Miles had at Roberts' house ; that is, to carry Miles' grain to Mr. Haywood's. It is absurd to contend that such an agreement revived the original liability upon the old note, which had been before wholly and forever discharged.

BELL, J. The language used by the witness, Cate, is colloquial, and is to be understood by us as it would be if used in common conversation ; and so understood, it imports that the parties said, as he understood them, that Miles held a note against Roberts, payable in grain, and then due ; and that Roberts had sent for Miles to come and receive the grain, which Roberts said was now ready for him. So understood, the evidence was free from objection. It was, however, merely introductory. The facts thus stated did not appear to be in any way in controversy, and the really material parts of the evidence are stated distinctly and directly.

It was competent for the parties, at any time before the contract was broken, to change the place of delivery, if one was agreed upon by a subsequent agreement. It cannot be necessary to cite authorities to such a point. See *Rhoades* v. *Parker*, 10 N. H. 83 ; *Flagg* v. *Dryden*, 7 Pick. 52.

We therefore understand the objection taken in the case to rest on the principle that parol evidence cannot be introduced to vary the construction of a written instrument, which is also too familiar to need any reference. The question then was, whether the evidence as to this point was to be regarded as interpolating

Miles *v.* Roberts.

a new place of payment in the note, as a part of the original agreement, or merely as evidence of a new agreement and understanding as to the place of delivery of the grain, to which they had then come.  And the evidence strikes us as proving that the contract, being deficient in apparent distinctness as to the place of delivery, it then became a subject of discussion, how the contract was to be performed in this respect ; and the parties, upon the subject being referred to, agreed in their idea of the contract, that it required the delivery to be made at Roberts' house.  Now it was immaterial what was the legal construction of the terms used, since the parties then agreed the contract was to be performed at Roberts' house.  The parol agreement to which the parties then came was sufficient to change the contract expressed in or inferable from the note, which, though in writing, was at most a parol contract.  The language used by the witness is indefinite as to the time referred to by the parties.  It admits of being understood as referring to the original understanding of the parties when the note was given, though that does not seem to us either natural or probable. There was no occasion to refer to any time past.  But if they did refer to their original understanding, the whole evidence shows that it was also their understanding at the time of speaking.  Their conduct cannot be explained upon any other idea. Their admission as to their present understanding cannot be rendered incompetent by the reference to the idea they originally had.

The principles which govern the construction of contracts for the delivery of specific articles are in general well settled, while their application to particular cases is often attended with difficulty.

The contract is to be considered in connexion with all its attendant circumstances, and the place of delivery is to be inferred from the nature of the contract, and of the articles to be delivered ; from the situation of the parties, and from any other circumstances from which the court may reasonably infer the intention of the parties.  Whatever may be thus reasonably inferred is regarded as if it was expressed in the contract itself.

Upon this principle it has been held in New-York and other States, that in case of a contract by a merchant to deliver goods ; *Lobdell* v. *Hopkins*, 5 Cowen 518 ; or by a mechanic for his wares, Ib. ; *Rice* v. *Churchill*, 2 Denio 145 ; *Craft* v. *Hurtz*, 11 Miss. 109 ; *Jacoby* v. *Schwartzwelder*, 1 Bibb 430 ; *Mountjoy* v. *Adair*, 1 Smith 196 ; *Goodwin* v. *Holbrook*, 4 Wendell 380 ; *Wilmarth* v. *Patton*, 2 Bibb 280. Or by a farmer to pay in produce ; *Lobdell* v. *Hopkins*, 5 Cowen 518 ; *Lafarge* v. *Rickart*, 5 Wendell 187 ; *M'Killip* v. *M'Killip*, 8 Barb. 552. They are to be presumed to be performed at their places of business, their shops, factories, or farms.

If this presumption is adopted here, the idea of these parties as to the place of payment of this note would be agreeable to the legal construction of the instrument, and the evidence would of course be wholly immaterial. This point it is not now necessary to decide, since the attention of the parties has not been directed to it in the argument, and the cases decided here do not support this view. *Flanders* v. *Lanfear*, 9 N. H. 201 ; *Rhoades* v. *Parker*, 10 N. H. 83 ; *Holmes* v. *Fisher*, 13 N. H. 1, and see *Wilder* v. *Whittemore*, 15 Mass. 262. But if this were held otherwise, and it was held that no place of payment could be inferred from the note itself, or any circumstances connected with it, then, if the articles are of a portable character, they are to be delivered to the creditor, like a payment in money.

If the articles are bulky and cumbersome, it is the duty of the debtor to seek the creditor, and learn from him where he wishes them to be delivered, and upon the creditor designating a reasonable place, to deliver them at that place. Co. Litt. 210, b ; Cro. El. 48 ; *Currier* v. *Currier*, 2 N. H. 75 ; *Flanders* v. *Lanfear*, 9 N. H. 201 ; *Slingerland* v. *Moore*, 8 Johns. 474 ; *Lafarge* v. *Rickart*, 5 Wendell 187, and cases cited ; *Mason* v. *Briggs*, 16 Mass. 453 ; *Aldrich* v. *Albee*, 1 Greenl. 120 ; *Bean* v. *Simpson*, 4 Shep. 31 ; 2 Kent's Com. 507 ; Stor. Con. 319.

If the creditor cannot be found, if he refuses to appoint any place, or, which is much the same, to appoint a reasonable place,

the debtor may himself select any suitable and reasonable place, and a delivery there, with notice to the creditor, if he can be found, will discharge the contract. Same authorities.

His responsibility, if he remains further liable, will be merely that of a bailee. 2 Kent's Com. 509.

The transaction testified to by Cole, to whose testimony exception is taken, may well be regarded as substantially of the character required by the rule, where no place is expressly or impliedly designated. The parties had come together at the request of Roberts, for the purpose of settling the note and receiving the grain. The enquiry is made by Roberts of Miles, where he understands the grain is to be delivered, and he declares he understands it is to be at Roberts' house, and his readiness to receive it there. He went up stairs to see if the grain would answer the contract, and on being asked if it was sufficient to answer the contract, said it was, and talked of taking it away at another day. This evidence was competent to prove that the plaintiff, being applied to to designate a place for the delivery of the grain, then appointed Roberts' house as the place, and that he then accepted it there.

The charge of the court on the subject of the agreement as to the place of delivery was correct and proper. There was no call on the court to give any instruction to the jury as to the place of payment, since, whatever might be the place appointed by the law for such payment, it was effectually changed by the agreement of the parties, and by that agreement they were thenceforth bound. Nor was it of any importance at what time the parties first came to a common understanding as to the place of payment. It might have been at the time of the original contract, or at any time afterwards. There is no attempt here to rely on any contract, original or subsequent, except the agreement made at Roberts' house, as testified to by Cole. If the parties then agreed in their understanding that the payment was to be at Roberts' house, they are bound by that agreement, and the tender of the grain at that place, or its delivery, or acceptance there, would discharge the contract. So if the place of

payment was agreed on, and the defendant had the grain ready to be delivered, and the plaintiff was there to receive it, saw it, and declared himself satisfied of its quality and quantity; that might well be considered as sufficient evidence of an acceptance by which the note would be discharged and the grain would be his.

If no more appeared than that the payment was agreed to be made at Roberts' house, and Roberts had there the grain ready to be delivered at that place, seasonably, in the month of November, to enable the plaintiff to take it away, and notified the plaintiff of that fact, and requested him to take it away, this would constitute a sufficient tender to discharge the contract.

It is too clear to be questioned that if a legal tender of the grain was made at the time and place of performance agreed upon, this would discharge such a contract, whether the tender was accepted or not. It is not necessary here to enquire what effect such a tender would have upon the title of the property, though there are strong analogies in the law which might induce a court to hold that upon such a tender the property of such articles would cease to belong to the debtor, and would vest in the creditor. 2 Kent 509. It has been often held that a party in whose possession the property of another, previously rightfully in his hands, is left, becomes *de facto* a bailee, and bound to take care of the property as a depositary; and it seems to be on this principle that a tender of money, to be available as a defence, must be accompanied with a profert of the money in court.

The third exception, that the new contract, alleged to have been made between these parties for the carriage of the grain to Heywood's, who had the custody of the note, was a waiver of the previous tender, or payment, seems entirely without foundation. That contract was precise and definite, and no necessity exists for giving to it any other than its ordinary effect. No presumption of an intention to give it this effect can be entertained, since it would be unusual, and out of the ordinary course of business. We are not aware of any decision which holds that a payment may not be cancelled by agreement of the parties, so as to leave the contract unaffected; but if such

effect has ever been allowed, it must have been in some exceptional case, since the ordinary rule is, that by payment the contract is wholly discharged, and thenceforth *functus officio*, and in those cases where it has been held that a note may be reïssued, it is regarded rather as a new contract than a revival of the old.

And the charge was correct, that if a new contract was made, it ought to be declared upon, and the plaintiff cannot recover upon a new contract in a declaration upon the old. There may be some exceptions to the general rule in the case of new promises under the statute of limitations, but the present case falls within none of them.

*Judgment on the verdict.*