NEW-YORK,
October, 1811.

SLINGER-
LAND
v.
MORSE.

A. having distrained the goods of B to wit, *horses* and household furniture, for rent, C. promised to deliver the goods to A in six days, or pay 450 dollars, and the goods were left in the possession of C. A demanded the goods within the six days, but did not designate any place at which they were to be delivered, and immediately after, and within the six days, went with C. to the house of B where the goods were; and C. there tendered the goods to A who said that he was not ready to receive them, but that if C. would carry the goods to D., A. would receive them, but C. refused to do so. In an action of assumpsit, by A. against C it was held, that the reply of A. to the offer of C to deliver the goods to A. at B.'s house, dispensed with any further tender or delivery on the part of C. especially as the articles were bulky and numerous.

There is a difference, in regard to tender, between things portab'e and things ponder·us. If no place be appointed for performance or payment, a tender to the person who is to eceive is sufficient.

Such a tender and refusal are a complete bar to the suit on the contract: and the plaintiff must resort to the person in whose possession the goods are, and who holds them as his bailee, and at his risk.

## SLINGERLAND *against* MORSE and others.

THIS was an action of *assumpsit.* The declaration. stated, that in consideration that the plaintiff had delivered to the defendants certain articles, viz. two horses, and several articles of household furniture, which were specified, the defendants promised, in writing, to deliver the same in six days, after demand, or pay 450 dollars. The plaintiff averred that he did, on the 1st of *August*, 1809, demand the same, and has been, and still was, ready to receive the same; yet the defendant did not deliver or pay, &c. The defendants pleaded *non assumpsit*, with notice that they would give in evidence, that the articles were the property of *Edward Fitzgerald*, and in his possession, and distrained by the plaintiff for rent; and that the goods continued in the possession of *Fitzgerald;* and that after the promise and demand, to wit, on the 15th of *June*, 1809, at the dwelling-house of *Fitzgerald*, they offered, within the six days, to deliver the articles, according to their promise, and did tender the same, and that the plaintiff refused to accept them; and that the plaintiff, after the expiration of the six days from the time of the demand, seized and took the articles into his own custody, for rent.

The cause was tried at the *Saratago* circuit, in *May* last, before Mr. Justice *Spencer.*

At the trial, the plaintiff gave in evidence the promise, dated the 7th of *June*, 1809, signed by the defendants, on the back of the notice to *Fitzgerald* of

the distress, by which the defendants promised to de-
liver to the plaintiff the goods, in the notice specified,
in six days after demand, or pay 450 dollars. The
plaintiff further proved, that the property was distrain-
ed, but not removed, or delivered to the defendants;
and that on an adjourned day for the sale of the goods,
the defendant, at the solicitation of *Fitzgerald*, sign-
ed the agreement, and the plaintiff left the property
at the house of *Fitzgerald*. That on the 8th or 9th
day, after the date of the promise, the plaintiff went
to each defendant, and demanded the goods, where-
upon the defendants went to the house of *Fitzgerald*,
where they met the plaintiff, and the defendants said
they were willing to deliver the goods which were
then there, and the plaintiff replied he was not prepared
to receive them, but came to give notice; but if the de-
fendants would carry them to Major *Canute's*, he would
receive them. Five or six days after, the plaintiff went
to the house of each defendant, for the goods, and all of
them were absent from home, except *Morse*, who de-
clared that he would do no more. Two or three days
after, the plaintiff went to *Fitzgerald*, and demanded the
goods, and he refused to deliver them.

The defendants offered to prove, that at the time of
the demand, the plaintiff and the defendants went to
the house of *Fitzgerald*, (where the goods were, and
had remained since they were distrained,) and offer-
ed and tendered the goods to the plaintiff, who refused
to receive them; and that the plaintiff declared to
*Fitzgerald*, that he did not mean to take the pro-
perty from him; that all he intended was to fix the de-
fendants, and make them liable. This evidence was over-
ruled by the judge, and a *bill of exceptions* tendered.
The jury, under the direction of the judge, found a
verdict for the plaintiff for 515 dollars and 15 cents.

The case on the bill of exceptions was submitted to the
court without argument.

NEW-YORK,
October, 1811.

SLINGER-
LAND
v.
MORSE.

*Per Curiam.* The facts offered to be proved by the defendants would have made out a complete defence. It is very questionable, whether the plaintiff's own proof was not fatal to him; but the evidence offered by the defendants would have been more full, and have shown the acts of the parties with greater precision and certainty.

Two questions arise upon this case; 1. Whether the testimony given and offered did not make out a valid tender of the goods; 2. If it did, then what was the effect of such tender and ' refusal upon the plaintiff's right of action ?

1. Here was to be a delivery of cumbersome specific articles, and, by the contract, no place was appointed for the delivery. They were to be delivered within six days after the demand, and the plaintiff makes the demand, and does not designate the place. The parties immediately after this demand, and within the six days, meet at the house of *Fitzgerald*, where the goods were, and the defendants there offered the goods, and the plaintiff refused to accept of them, or, according to the plaintiff's own proof, the defendants then declared they were willing to deliver the goods, and the plaintiff replied that he was not prepared to receive them, and appointed a different place, where he would receive them. This answer of the plaintiff was a dispensation from any further effort to make a tender. Any other offer was not requisite, especially considering the nature of the articles. The articles were numerous and bulky, and there was an offer to deliver, and that was enough. In *Stone* v. *Gilliam*, (1 *Show.* 144.) it was admitted, that there was a difference in the act of tender, between cumbersome and portable articles. A waiver of any further tender by the declaration, or equivalent act of the creditor, will excuse an actual offer, even in the case of money. (3 *Term Rep.* 683. 10 *East*, 101. 5 *Tyng*, 67.) But whatever difficulty there might be, as to the fact of a tender, if it depended solely upon the plaintiff's evidence, the defendants offered to prove

an absolute tender, and that proof ought to have been received. Upon this case, then, and for the purpose of testing the materiality of the testimony, we are to consider the tender as duly proved, and then the question is, whether the defendants were entitled to make the tender. And upon this point, we do not perceive any ground, either in reason or authority, upon which to question the right. The general rule is, that if no place be appointed for payment or performance, a tender to the person is good, and this, too, in cases in which a personal tender was not required, as of rent issuing out of land. (17 *Ass.* pl. 2. *Bro.* tit. *Condition*, pl. 103. *Cro. Eliz.* 48.) Lord *Coke* says, (*Co. Litt.* 210. b.) that "if the condition of a bond or feoffment be to deliver twenty quarters of wheat, or twenty loads of timber, or such like, the obligor or feoffor is not bound to carry the same about and seek the feoffee, but the obligor or feoffor, before the day, must go to the feoffee, and know where he will appoint to receive it, and there it must be delivered. And so note a diversity between money and things ponderous." This provision is evidently made for the ease and favour of the obligor, and to save him from the burden of seeking the obligee with the ponderous articles. If, then, he and the creditor should happen to meet, at the place where the articles were deposited, and after the delivery had been demanded, he is entitled to deliver them at such place; such a delivery is in coincidence with every principle of law. It is a delivery to the person, and at the place where the articles were left or existed at the time of the contract. In this instance, there was a peculiar fitness in the place of the tender. The plaintiff had distrained the goods at the place, and left them there, in the first instance, in possession of *Fitzgerald.* They were afterwards taken into the custody of the defendants for safe keeping, and who engaged to see them forthcoming upon demand. The parties, after the

demand, met at this very place, and on this very sub-ject. For the plaintiff to, refuse a tender there, and to require it to be made at a different place, was not agree-able to the spirit of the contract, and was arbitrary and unreasonable. The defendants were entitled, at that mo-ment, to deliver themselves of the burden; and if they exercised the right which the law gave them, the plain-tiff refused, at his peril.

2. The next question is, what effect this tender would have upon the action? We consider it as a complete bar to the suit upon the contract. If a man be bound to pay 100 quarters of wheat, and he tender it, at the day, he need not plead *uncore prist*, for the corn is *bonum peritu-rum*, and it is a charge for the obligor to keep it. (*Co. Lit.* 207. a. *Peytoe's* case, 9 *Co.* 79. a.) So it was held, still more early, (20 *Edw.* IV. 1 *Bro.* tit. *Tout Temps Pr st*, pl. 31.) that if an obligation be to enfeoff the plain-tiff, by a day, or to deliver him a horse, tender and re-fusal is a bar for ever. The delivery of the goods was a thing collateral to the obligation, as the books term it, and, by tender and refusal, the plaintiff shall never be entitled to the money. Here was no *precedent* debt *or duty*. He must resort to the specific articles tendered, and the person in whose possession they are, holds them as his bailee, and at his risk. This effect of a tender and refusal, correctly made, of a specific article, is ana-logous to the effect of a *consignation* under the *French* law. (*Pothier, Traité des Obligations,* No. 545. )

We are of opinion, that the verdict be set aside, and a new trial awarded, with costs to abide the event of the suit.

New trial granted. <i>a</i>)

(*a*) See S. C. 7 *Johns. Rep.* 463.