JOHN MCPHERSON, APPELLANT, V. ALFRED N. WISWELL ET AL., APPELLEES.

1. **Oral Contracts:** EVIDENCE. One W., claiming to be the owner of nineteen reapers by virtue of an oral contract with M. & M., which contract he claimed to have fulfilled on his part, sold said reapers to one N., who obtained possession of the same by replevin to which the plaintiff was not a party. *Held*, That the evidence failed to show a completed contract between W. and M. & M., but merely an oral agreement to enter into a written contract, and that there had been no actual delivery of the reapers to W., and he had no title to the same.

2. ———: ———. A party who claims to have fully performed an oral agreement to exchange land for other property, must show: First, a definite contract to that effect, and its terms; Second, Such a part performance on his part that its rescission would be a fraud upon him; and, Thirdly, the delivery of possession in pursuance of the contract.

3. ———. In no case will a court decree specific performance unless the contract is fully established.

4. **Tender.** While a tender of property need not as in the case of money be kept good, yet the debtor must act in good faith with the creditor, and cannot appropriate the property to his own use and claim that the debt is satisfied.

APPEAL from the district court of Gage county. Tried below before DAVIDSON, J.

*A. Hardy*, for appellant.

*Colby, Hazlett & Bates*, for appellees.

MAXWELL, J.

In July 1877, A. N. Wiswell entered into an oral agreement with James and E. C. Marsh, whereby he was to receive from said Marshes a large number of harvesting machines, known as Marsh No.4 and Valley Chief. Twenty-seven of these machines were then at Beatrice in the care

42

of one Harrison, an agent of the Marshes, and a certain number in addition were to be furnished in the year 1878. In payment for these machines Wiswell was to assign to the Marshes his interest in three sections of school land in Gage county, and convey by deed a quarter section of land in Kansas. He also sold them certain personal property on the school lands above referred to in Gage county. The Marshes were to pay him a considerable sum of money when the contract was completed, as the difference in the exchange of property, and to give security for the delivery of the machines in 1878, and the entire contract was to be reduced to writing and signed by the parties. The Marshes informed Wiswell that he could take the reapers in Harrison's charge at Beatrice, and Wiswell informed the Marshes that they could take possession of the school lands and personal property thereon, which they did to the extent of making arrangements with the tenants of Wiswell cultivating said lands, to continue such cultivation for them and to take charge of the personal property. There was no actual change of possession. The Marshes also sent a span of horses and perhaps some other property on to one of the farms for the use of the tenant. Under this arrangement Wiswell, during the months of July and August, 1877, sold nine of the machines and obtained the same as fast as sold from Harrison. He testifies also that Harrison, the agent of the Marshes, became his agent for the purpose of keeping the nineteen machines in controversy. There was no change of the possession however.

In September, 1877, Wiswell and the Marshes endeavored to reduce the agreement to writing and complete the contract, but were unable to agree, and no written agreement was made. The Marshes thereupon refused to deliver the nineteen machines in the hands of their agent and demanded those already delivered, and thereafter about the 5th of November, 1877, sold the nineteen in Harrison's possession to the plaintiff. Wiswell, on or about the

10th of December, 1877, tendered assignments of the school land leases and a deed for the Kansas land to the Marshes, and demanded a compliance with the oral contract and a delivery of the machines in question, and thereafter assigned his rights to the reapers in question to Norcross, who, so far as appears is a mere volunteer, as the evidence fails to show that he paid anything for the property. Wiswell has since sold all the land and other property which he had contracted to the Marshes, and has paid nothing whatever either for the nine machines sold by him, or for the machines in question, so that if he possessed any rights to the same after the failure of the parties to complete the contract in September, 1877, they were naked legal rights derived alone from the executory agreement of July, 1877, and Norcross takes no better title than he possessed. The petition states in substance that Wiswell and Norcross, in order to defraud the plaintiff, on or about the 25th of December, 1877, obtained possession of the nineteen machines in question by a suit in replevin to which the plaintiff was not a party, and converted said machines to their own use. The jury in the court below found for the defendants, and judgment was rendered on the verdict.

It is very clear that this exchange of property was not completed. There was an oral agreement to exchange, and in pursuance of that agreement Wiswell received and sold certain reapers belonging to the Marshes, and in a general way turned over certain personal property to them; that is, they were to take the property as a part of that to be received for the reapers, but there was no change of possession, the tenants of Wiswell, in whose possession it was found, continuing to retain the same. It was well understood by the parties at this time that to complete the contract on the part of the Marshes they must deliver the reapers then in Harrison's hands to Wiswell, pay the amount of money agreed to be paid as the estimated difference in value of the property received over the reapers,

and give security for the delivery of the reapers due in 1878; and on the part of Wiswell that he would duly transfer the school and other lands, and fully comply in all respects with the terms of the oral agreement; and that the oral agreement was to be reduced to writing. Any misunderstanding by either of the parties as to the terms of the contract would have been fatal to it. And we find Mr. Wiswell in September, 1877, refusing to sign a written agreement or set forth the terms of the alleged oral contract. He claims that as reduced to writing it varied somewhat from the terms of the agreement as he understood them, but he failed to put in writing his own version of the same, or point out wherein it would differ from that put in writing by the person selected by the parties themselves to write the same.

In no case will a court decree specific performance unless the contract is clearly established. *Williams v. Lowe,* 4 Neb., 382. This the proof fails to do. A party who claims to have fully performed an oral agreement to exchange lands for other property must show—*first,* a definite contract to that effect and its terms; *second,* such a part performance on his part that its rescission would be a fraud upon him; and *third,* the delivery of possession in pursuance of the contract.

The contract was rather an agreement to exchange property upon certain terms and conditions than an actual exchange. In such cases where anything remains to be done by the terms of the contract before the transaction is complete the title to the property does not pass except as to that actually delivered for that purpose. *Ward v. Shaw,* 7 Wend., 404. *Gibbs v. Benjamin,* 45 Vt., 124. *Welsh v. Bell,* 32 Penn. St., 12. *Martin v. Hurlbut,* 9 Minn., 132. *Straus v. Ross,* 25 Ind., 300. It was a mere oral agreement as to the exchange of property, which it was well understood would not be complete until reduced to writing, a conveyance of the land made, and the Marshes

had paid a large sum of money as the difference in value of the property and given security for the delivery of the reapers in 1878.

Mr. Wiswell testifies (page 103 of the record):

Q. I want to know what the writings were to consist of, what writings you were to make, and what writings Marsh was to make?

A. I was to make an assignment to three sections of school land and make him a deed for the other land, and he was to give me a contract for the machines and was to pay me something in cash and give notes for the balance and security.

Q. And turn over the machines?

A. And turn over the machines.

This testimony was given on behalf of the defendants to sustain the issue on their part, and it has the opposite effect. Besides, the assignments of the leases, introduced in evidence by the defendants as having been tendered to the Marshes, are dated December 10th, 1877. It is true that under the intimations of his attorney, Mr. Wiswell testifies that these are not the assignments he tendered in September, 1877, but if they are not it is somewhat remarkable that they should have been introduced in evidence and the others not. The reasonable presumption is that these are the identical assignments.

In our view the question of tender does not enter into the case, because there has been an entire failure on the part of Wiswell either to plead or prove a clear and definite contract. Second. Because he fails to show such a part performance as would have entitled him to a decree, and he was not placed in possession of the property. At the most it was a partial payment upon an oral agreement and is not sufficient. *Purcell v. Miner*, 4 Wall, 513. *Chamley v. Hamsberry*, 1 Penn. St., 16. *Phillips v. Thompson*, 1 Johns. Ch., 131. *Price v. Salusbury*, 32 Beav., 446. Wiswell, therefore, could not enforce the alleged

contract. It is evident, however, that the alleged tender was not sufficient and was not made in good faith. While it is true that a tender of property, if properly made, need not be kept good like a tender of money, because such tender vests the title to the property in the creditor, yet there must be an actual tender at the time agreed upon to make it valid. *Frey v. Drahos,* 10 Neb., 594. *Smith v. Loomis,* 7 Conn., 110. *Curtiss v. Greenbanks,* 24 Vt., 536. *Leballister v. Nash,* 24 Me., 316. *Lamb v. Lathrop,* 13 Wend., 95. In the case last cited the defendants promised one year after date to pay the plaintiff $50, in a horse, neat stock, or first rate pine lumber, to be taken at the market rate at the appraisal of two persons named Bartlett and Rowley. The defendants tendered a horse appraised by Rowley at $70, and averred that Bartlett was absent from the state and his services could not be had. The court held that the tender was not sufficient. The debtor also must act in good faith. If he applies all the property tendered to a purpose inconsistent with its application to the payment of the debt the jury will be justified in finding the tender was not made in good faith. And this is particularly applicable in this case where Wiswell has converted all the property alleged to have been tendered to his own use.

Upon the whole case it is very clear that the nineteen machines in question were never delivered to Wiswell, and that upon the failure of negotiations in September, 1877, his right to any portion of them ceased, and that the defendants wrongfully converted the same to their own use. They are therefore liable for their value. The judgment of the district court is reversed and the cause is remanded.

REVERSED AND REMANDED.

THE other judges concur.