ELIZABETH GOODYEAR *et al.*, ADMRS., Appellants, *v.* JOHN B. ADAMS *et al.*, Respondents.

*N. Y. Supreme Court, Fourth Department, General Term, May* 12, 1889,

1 *Deed. Non Compos Mentis.*—A deed executed by one *non compos mentis* is absolutely void, and incapacity of the grantor may be shown to defeat any claim under it, though no fraud is alleged and such incapacity has not been legally or judicially determined at or before the execution of the deed.

2. *Same. Foreclosure.*—Where in an action to foreclose a mortgage, the defendants, who derive title to the mortaged premises through will from the mortgagor's grantor, claim that the mortgagor's deed is a forgery and procured through the exercise of undue influence upon the grantor, who was of unsound mind, it is sufficient for them in the first instance to show the fact of unsoundness, and then the plaintiff must establish the facts necessary in equity to sustain the deed.

3. *Same. Equities.*—The equities, in such case, do not depend on the dealings between the mortgagor and mortgagee, but on the dealings between the mortgagor and his grantor. The rule in the case of instruments sought to be set aside on the ground of fraud does not apply.

4. *Error. Harmless.*—An error in the admission of evidence, which is not material and will not appreciably affect the result, is no ground for reversal.

Appeal from a judgment entered upon a referee's report, dismissing the complaint, and adjudging that the mortgage described in the complaint was null and void, and directing its cancellation.

On the 31st March, 1879, the defendant, Joseph P. Adams, executed and delivered to plaintiff's testator a mortgage for $1,600, on the undivided half of 325 acres of land in the

town of Barker, Broome county.   This mortgage was given
to secure a loan then made for its amount, and was recorded
on the 8th April, 1879, and this action is brought to fore-
close it.   The defendants who answer, set up in substance
that they own the premises, deriving title under the will of
Asa K. Adams, who derived his title from the will of Joshua
Adams; that the mortgagor, Joseph P. Adams, claimed
under a deed purporting to have been made by Joshua
Adams on 10th February, 1869; that this deed was a forgery,
was never executed or delivered by said Joshua; that he
was at that time of unsound mind, and did not possess
sufficient mental capacity to make said deed, or to attend to
any business whatever.   Affirmative relief was demanded
that the complaint be dismissed and that defendants have
judgment, cancelling the mortgage as a cloud on their title.

A reply was put in.   On the trial the contest was over
the validity of the deed of 10th February, 1869.

It appeared that for some time prior to 1869, the premises
were owned and occupied by Joshua and Asa K. Adams as
tenants in common.   Johsua died on the 18th March, 1869,
leaving a will, dated November 13th, 1866, which was pro-
bated June 11th, 1869, and which gave all his property to
his brother, Asa.   The latter continued to live on the prem-
ises, where he died in 1880, leaving a will, bearing date
April 16th, 1878, and probated 25th April, 1881, and which
devised the premises to the answering defendants.

On the 25th of February, 1879, the mortgagor placed on
record a quit-claim deed, dated February 6, 1869, purport-
ing to have been executed to him by Joshua Adams, and to
have been acknowledged before C. B. Miller, then a justice
of the peace, on the 10th of February, 1869, and to convey
for the consideration as therein expressed of one dollar and
services rendered at divers times, the undivided half of said
premises, and also an undivided half of other forty acres,
which had been in fact conveyed by Joshua to a railroad

company in 1854, and in which he had since no interest or possession.

The referee found that the name " Joshua Adams," written opposite the seal was not the signature of said Joshua Adams, was not his handwriting, and was not placed there by his consent or direction or authority, and that the name so written, so far as it purported to be the genuine signature of Joshua, was a forgery; that the name " C. B. Miller " written upon the deed after the form of acknowl-edgment, was the signature of said C. B. Miller, and written there by him; that on the 10th of February, 1869, and for some time prior thereto, said Joshua Adams was feeble in body and mind, and was mentally unsound and incompetent to, and incapacitated from entering into any contract, and and from understanding the nature or effect of a deed, and had not sufficient intellect, capacity or understanding to know or appreciate the nature, extent or value of his prop-erty, nor the persons who were or should have been the natural objects of his bounty, and who should be provided for in any voluntary disposition of the same; that he had no knowledge or understanding that he was conveying his in-terest in the lands described in said deed, and had no inten-tion of parting with his title to the said lands, and never understood at the time, or thereafter, that Joseph F. Adams had or claimed to have any interest in said lands under said deed or otherwise; that said Joshua Adams never signed, acknowledged or executed said deed, or delivered the same to said Joseph P. Adams; that the possession of said deed by said Joseph P. Adams, with the signature of C. B. Miller thereon, was obtained by fraud and without the knowledge or consent of said Joshua Adams, and that there was no consideration from said Joseph P. Adams to said Joshua Adams to support said deed.

*S. Mack Smith,* for appellants.

*F. C. Millard,* for respondents.

MERWIN, J.—One of the issues presented by the answer was whether Joshua Adams, on the 10th February, 1869, was of unsound mind. The referee found he was, and this finding is claimed to be unsupported by the evidence. Mr. Adams was an old man, had been sick for some time, and died soon after the date of the deed. There is evidence tending to show that in and from the fall previous, his mind was impaired; that he was unconscious much of the time, was not able to help himself or appreciate his personal wants, was not able to engage in business transactions, could not talk understandingly. The testimony of those who had the care of him to a considerable extent was produced, and the surrounding circumstances shown. The question of unsoundness was one of fact. The conclusion of the referee was, I think, warranted by the evidence.

In Van Deuzen v. Sweet (51 N. Y. 378) it was held that a deed executed by one *non compos mentis* is absolutely void, and that, in a law action to recover possession of real property claimed by a defendant under such a deed, the fact of the incapacity of the grantor may be shown by the plaintiff, to defeat such claim, although no fraud is alleged and such incapacity had not been legally or judicially determined at or before the execution of the deed. This case does not appear to have been overruled.

In Riggs v. American Tract Society (84 N. Y. 330) the complaint, in substance, alleged that Riggs, the plaintiff's testator, was of unsound mind, and while in that condition transferred to defendant, by gift or contract, divers sums of money, which it still held and refused to return. It was held that a good cause of action was stated, and that the contract could be rescinded, and that if the defendant sought to maintain the contract on the ground that it was made in good faith for the benefit of the lunatic without notice of incapacity, and so far performed that if rescinded, the party executing cannot be placed *in statu quo*, these facts must be alleged and proved by the defendant.

According to the logic of the Riggs Case, it was sufficient for the defendant in the present case to show in the first instance the fact of unsoundness. It then was incumbent on the plaintiff to show the facts necessary in equity to sustain the deed. These equitable rights depended on the transaction as it occurred between Joshua Adams and Joseph P. Adams, the grantee. It was not shown that the deed was for the benefit of Joshua, or was taken in good faith or for adequate consideration. On the contrary, it was found by the referee that it was obtained by fraud and without consideration, and the evidence was sufficient to support these findings. The question was not whether the plaintiff's testator took the mortgage in good faith and without notice, actual or constructive, of the invalid deed, but whether the deed, invalid at law, could in equity stand. The defendants have a right to rest on the allegation and finding of unsoundness, and if so, the existence of fraud is only important to rebut the equities that might be claimed to sustain the deed. In this regard, the plaintiffs would have no greater rights than the mortgagor. The rule in the case of instruments sought to be set aside on the ground of fraud would not apply.

In this view of the case it does not become important to determine whether, as claimed by plaintiff upon the evidence, it is to be presumed, from the genuineness of the signature of the justice, that the deed was acknowledged by the grantor, and delivered. Assume that was the case, it does not dispose of the issue as to unsoundness, so it may be, as claimed by plaintiffs, that the possession of Asa K. Adams was not of such a character as to necessarily be inconsistent with the claim of Joseph P. Adams to an undivided one-half, and that, therefore, the mortgagee was not called on to inquire.

This is not necessary to determine, as the equities here do not depend on the dealings between the mortgager and mortgagee, but on the dealings between the mortgagor and

Joshua Adams, and from those dealings no equity appears, sufficient to sustain the deed.

It is further claimed by the appellants that the referee erred in not finding, as requested, that Asa K. recognized the conveyance in question. Assuming this was important (Enders *v.* Sternbergh, 2 Abb. Ct. App. Dec. 53), it was clearly a disputed question, depending upon the inferences to be drawn from the evidence, including some significant circumstances. The evidence is abundant to sustain the refusal of the referee.

There are no other exceptions as to findings, or requests to find, that are important to be considered.

Divers exceptions as to rulings on evidence were taken, but our attention is only called to the following : Upon the rebuttal, the defendant's counsel asked a witness in reference to an occasion in 1880 when Joseph P. Adams served on Asa K. Adams a notice of his ownership, and prohibiting the cutting of timber, whether Asa told Joseph on that occasion that he (Joseph) didn't own a foot of the premises or the land. This was objected to by plaintiffs, but admitted, and the witness answered that he told him he didn't own any of it. A similar question was asked two other witnesses in reference to another occasion about the same time, when the deed in question was read over, and a similar answer taken, over plaintiff's objection. Assuming this was objectionable, the matter was not important, inasmuch as Joseph P. Adams had previously testified without objection that Asa had said to him substantially the same thing. The error, therefore, if any, was not material and would not appreciably affect the result.

The foregoing considerations lead to the conclusion that the judgment should be affirmed, with costs.

HARDIN, P. J., concurs ; MARTIN, J., not voting.