IDA M. HAINES, as Administratrix, etc., of WILLIAM D. HAINES, Deceased, Appellant, *v.* WILLIAM E. SCOTT, Respondent.

*Contract with a party who subsequently becomes insane — recovery of a payment on the purchase price.*

Where a person who has executed a contract for the purchase of land becomes insane before the time fixed for its completion, the administratrix of the insane person, in the absence of evidence showing that his mental condition at the time of executing the contract was such that he had not the power to contract, or that the other party to the contract had knowledge of any mental disturbance, or of the existence of any facts sufficient to put him upon inquiry, or that the land was worth less than the contract price, cannot recover from the other contracting party the proceeds of the note of a third party, given to him by the insane person at the time of the execution of the contract as part payment.

APPEAL by the plaintiff, Ida M. Haines, as administratrix, etc., of William D. Haines, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 26th day of April, 1898, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term, and also from an order entered in said clerk's office on the 10th day of May, 1898, denying the plaintiff's motion for a new trial made upon the minutes.

*William S. Bennet*, for the appellant.

*W. J. Groo*, for the respondent.

INGRAHAM, J. :

William D. Haines, the plaintiff's intestate, entered into a contract with the defendant whereby Haines agreed to purchase from the defendant a tract of land in Pike county, Pennsylvania, with certain personal property, for the sum of $34,500, of which $7,500 was to be in cash ; $1,000 of this $7,500 was to be paid by the transfer of a $1,000 note upon the execution of the contract, and $6,500 was to be paid within thirty days from the date of the contract. The balance was to be paid by assuming a mortgage upon the premises, and by the execution of a second mortgage by Haines to the defendant. The contract was executed on February 15, 1893, and was

to be completed on March 18, 1893. A note of a third party for $1,000 was delivered to the defendant by Haines, which note was paid to the defendant. Subsequently, and before the time for the completion of the contract, Haines became insane, and nothing further was ever done under the contract. Haines was subsequently taken to an insane asylum, where he died in April, 1895, suffering from general paresis. No action was taken to disaffirm this contract or to recover back the consideration paid by Haines upon its execution during his lifetime; but after his death his widow, being appointed administratrix, commenced this action to recover the amount of the note delivered by Haines to the defendant, and which had been paid to the defendant. The defendant was called as a witness by the plaintiff, and testified to the execution of the agreement between himself and Haines, the receipt of the note from Haines, and the fact that the note had been paid to him, and that he accepted this $1,000 note as a first payment under the contract. It appeared from the evidence that Haines was in the possession of his usual faculties at the time of the execution of the contract and prior thereto. There is no evidence that before or at that time he exhibited any indication of insanity, or that any one of his usual companions suspected that he was not of sound mind. His widow was called as a witness, but failed to testify to any fact which would show that Haines was insane prior to the time he executed this contract. A nephew of Haines was called by the plaintiff and testified that he resided in the same house with Haines from November, 1892, to February or March, 1893, and later; that up to the time that he saw Haines in the south, after the 11th of March, 1893, he never noticed anything that indicated mental unsoundness; that the first intimation he had that Haines was suffering from any mental disturbance was a letter that he received from Haines while in the south after the 11th of March, 1893. A brother-in-law of Haines was called by the plaintiff, who testified that he first noticed, from anything that Haines said or did, that his mind was in any degree impaired when he returned from the south, about March 22 or 23, 1893. With the exception of the evidence of the physician, to which attention will be called hereafter, there was not a particle of evidence to show that, at the time this contract was executed, Haines was insane, or had ever exhibited any evidence of insanity. It seems that, some time

after this contract was made, and some time after the 1st of March, 1893, Haines went to Florida, remaining there about ten days. He then left his wife in Florida to return to New York, and seems to have stopped at Florence, South Carolina, and in consequence of a communication that he sent to his nephew, his nephew went to Florence and found him there. He then seems to have become insane; to have been brought back to New York, and to have continued insane until his death; but there is not a particle of evidence to show that, before March eleventh, he had exhibited any indication of insanity. Dr. Evans, the physician in charge of the insane asylum in which Haines died, testified that he was admitted into the asylum on June 1, 1893, and died on April 8, 1895, and that he was suffering from general paresis. The witness was shown two letters of Haines', dated March thirteenth and March seventeenth, written to his wife, in which he said that, from the handwriting of these letters, there were decided characteristics of general paresis, but that the one written on March thirteenth did not have the indication to the same degree as that written on March seventeenth. He further testified that he considered that Haines had been suffering from the disease for four or five months prior to his admission to the asylum on June 1, 1893; that when Haines was admitted to the asylum he had just passed through the first stage of the disease; that in the first stage of the disease a person may act in such a way that a person unfamiliar with his mental disturbance would believe that he was sane. There was no evidence to show what effect the first stage of general paresis has upon a person's ability to make a contract or to understand what he is doing; and certainly nothing to show that, on February sixteenth, when this contract was made, the disease had so progressed that Haines was not capable of making a valid contract. At that time it would appear that those who were nearest to him, in constant communication with him, had not noticed any evidence of mental derangement, or loss of mental power. He was attending to his usual avocations, and even those who knew him best had failed to notice any evidence of mental disturbance. His nephew, who lived with him, stated that he had talked of purchasing this property for several months prior to the execution of the contract. Nor was there the slightest evidence that any advantage was taken of Haines in making the con-

tract, or that the property was worth less than what he had bargained to pay for it. By the contract the defendant undertook to convey the property to Haines upon payment of the purchase price as provided in the contract, and as the consideration for this contract Haines agreed to purchase and to make a payment on account. There was no evidence to show that Haines exhibited any indication of insanity or of mental derangement, or that the defendant had the slightest reason to suppose that Haines was not entirely competent to make the contract and to perform its conditions. It is quite evident that his wife had no suspicion of Haines' incompetency, for she was in the possession of the note which was delivered to the defendant, and it was in response to a telegram from Haines to his wife, stating that he had purchased this property and requesting that the note be sent for the purpose of making a payment on account, that the plaintiff sent the note to Haines, and thus Haines was enabled to deliver it to the defendant.

Upon this evidence a verdict that at the time of the making of this contract Haines was in such a mental condition that he was not responsible for his acts, would have been entirely unsupported. The rule as to the responsibility of insane persons for their contracts is well settled. In *Mutual Life Insurance Company* v. *Hunt* (79 N. Y. 541) it was held that where a contract was executed upon a verbal consideration of which the lunatic had the benefit, made by the plaintiff in good faith, without fraud or interference, without knowledge of the insanity and without notice or information calling for inquiry, it was enforcible against the lunatic. The court, quoting with approval the remarks of the chancellor in *Elliot* v. *Ince* (7 De G., M. & G. [56 Eng. Ch.] 487) said : " The principle of that case was very sound, viz., that an executed contract, when parties have been dealing fairly, and in ignorance of the lunacy, shall not afterwards be set aside ; that was a decision of necessity, and a contrary doctrine would render all ordinary dealings between man and man unsafe." In *Loomis* v. *Spencer* (2 Paige, 158) the chancellor said " although a contract of purchase made by either (a lunatic or infant), except for necessaries, could not be enforced, yet a court of equity ought not to interfere where the infant or lunatic has actually had the benefit of the property, if the contract was made in good faith without knowledge of the incapacity and where no advantage

has been taken of the situation of the party." In *Riggs* v. *American Tract Society* (84 N. Y. 335) the same principle was reaffirmed. (See, also, *Yauger* v. *Skinner*, 14 N. J. Eq. 389 ; *Hosler* v. *Beard*, 35 L. R. A. 162.) In *Matter of Beckwith* (3 Hun, 443) the facts were entirely different, Judge Mullin, in delivering the opinion of the court, reaffirmed the rule before stated, saying : " A contract with a person not known to be of unsound mind, and who has not been found, upon a commission *de lunatico inquirendo*, to be insane, may be sustained if it shall be proved to have been fairly made, and without advantage being taken of the lunatic." In that case Beckwith had been confined in a lunatic asylum for many years, and judicially declared to be insane ; a commission of his estate had been appointed, and the contract that the court refused to enforce was one for legal services made with Beckwith while in an asylum and with full knowledge of his insanity and of the judicial declaration that he was insane.

We think, however, that in this case there was no evidence to show that Haines was insane at the time he made this contract so that he had not the power to contract ; that the defendant had knowledge of any mental disturbance, or that there were any facts to put him upon inquiry.

There are several exceptions to rulings upon questions of evidence which are insisted upon by the plaintiff, but they are without merit. None of them relate to testimony as to Haines' mental condition at the time the contract was executed, or as to any knowledge of the defendant that would make inquiry on his part proper. The price that the defendant paid for the property when he purchased it was quite immaterial. There was no allegation that any unfair advantage was taken of Haines, or that the property was not worth the price that Haines agreed to pay for it. The remarks of the court when the witness Parker was called, were not a ruling to which an exception was taken. What was said evidently related to the insanity of Haines after he returned from the south, and not at the time when the contract was made. If the plaintiff had wished to examine the witness as to Haines' condition at the time the contract was made, an intimation of that fact to the court would undoubtedly have led the court to allow the testimony, but, at any rate, there was no ruling upon evidence that was excepted to, and the witness

was voluntarily withdrawn without an exception being taken. None of the other questions require notice, and we think the complaint was properly dismissed.

The judgment is, therefore, affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and MCLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.