Winifred McCarthy, as Committee of the Property of James Q. McCarthy, an Incompetent Person, Respondent, v. Bowling Green Storage and Van Company, Appellant.

First Department, March 8, 1918.

Incompetent person — validity of contracts by incompetent prior to adjudication and appointment of committee — rescission — right of infant to avoid or rescind contracts made during minority — equitable defense to avoidance or rescission by committee of contract of purchase by incompetent — refusal of seller to accept offer of return — necessity for formal tender — admissibility of evidence as to proceeds of resale of property by committee — election by committee to avoid purchase by incompetent — revesting of title in former owners — right of committee to retain property purchased by incompetent upon seller's refusal to retake the same — pleading — when question of incompetency immaterial.

Where a person, pursuant to law, is duly adjudged insane or otherwise incompetent and a committee has been appointed, the world is chargeable with notice and every contract thereafter made with him is absolutely void; but contracts made by an incompetent person before such an adjudication and appointment are voidable only and at his election on recovering from the disability or at the election of his committee or personal representatives or heirs, and on such election being made, an action either at law or in equity may be brought or defended for the restoration or retention of his property.

The right of an infant to avoid or rescind contracts made during his minority does not depend on his ability to restore the consideration or otherwise make restitution to the other party with whom he contracted or whether such party can be placed in statu quo; but to the extent that he still has the consideration, the other party becomes entitled thereto.

If a contract with an incompetent is fair and for his benefit and made in good faith and without notice of his incapacity, and the other party cannot be placed in statu quo, these facts constitute an equitable defense to the avoidance or rescission of the contract to be pleaded and proved as such.

In an action by the committee of an incompetent who had elected to avoid a purchase by the incompetent of certain bulky property, to recover the purchase price thereof, the plaintiff was relieved from making a formal tender by the defendant's refusal to accept her offer to return the property.

The court having ruled in such action that it would receive evidence as to the amount received by the plaintiff upon a resale of the property by her in reduction of damages, and the defendant having accepted a stipulated

amount, the latter must be deemed to have ratified the sale made by the plaintiff and to have elected to accept the proceeds as the market value of the property.

On the election of the committee to avoid the purchase by the incompetent, the title became revested in the former owners with the right to possession and to pursue any remedy therefor in the defendant.

The plaintiff had the right on defendant's refusing to take the property to retain it or to store it for the account of the defendant, but her only right was that of a bailee.

As the defendant did not plead an equitable defense to the plaintiff's suit for a rescission, the question as to whether or not at the time of the sale it had noticed that the purchaser was incompetent is immaterial.

SHEARN, J., dissented, with opinion.

APPEAL by the defendant, Bowling Green Storage and Van Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 21st day of February, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*John Godfrey Saxe* of counsel [*Edwin D. Worcester* with him on the brief; *Worcester, Williams & Saxe,* attorneys], for the appellant.

*Edwin N. Moore* of counsel [*Henry T. Hall* with him on the brief; *Griggs, Baldwin & Baldwin,* attorneys], for the respondent.

LAUGHLIN, J.:

This is an action by the committee of James Q. McCarthy to recover the sum of $1,706.20 which he paid to the defendant on the 4th of March, 1915, as the purchase price of certain articles of personal property sold to him on an auction thereof conducted by the defendant and the further sum of $70 paid by him to the defendant for transporting the property from the place of sale to his residence. The action was brought on the theory that McCarthy at the time in question was incompetent to make a contract and that his committee elected to avoid the purchases. The plaintiff alleged that at the time of the purchase McCarthy was and for more than nine years prior thereto had been of unsound mind and incapable of transacting business, and that in a pro-

ceeding in the Supreme Court he was adjudged to be a lunatic and incompetent in 1906, and that he was again adjudged to be a lunatic and incompetent in a like proceeding on the 5th day of April, 1915. It is not alleged in the complaint that there was an inquisition *de lunatico inquirendo* or that a committee was appointed in either instance. It appears that both adjudications were *ex parte* by justices of the Supreme Court on the affidavits of two physicians who were examiners in lunacy and for the purpose of committing McCarthy to an institution, and that the adjudication on which the committee was appointed was made sometime after the second commitment and while he was an inmate of an institution thereunder. At the time, therefore, when McCarthy purchased the property there had been no adjudication that he was incompetent to transact business and the management of his property and affairs had not been taken out of his hands. The sole issue submitted to the jury was whether McCarthy was incompetent at the time he purchased the property. The evidence adduced in behalf of the plaintiff on that issue was sufficient to sustain the verdict and its sufficiency is not questioned on the appeal. The property purchased by McCarthy consisted of about 350 lots of goods auctioned off separately. That the property was bulky is indicated by the charge for transportation and the schedule of items showing that it consisted, among other things, of an automobile body, two iron safes, a large florist's ice box, bureaus, couches, beds, and various articles of furniture, bundles of books and clothing, over fifty bolts of cloth and trunks. The plaintiff alleges that after her appointment as committee and before the commencement of the action she offered to return and surrender all of the property so purchased by McCarthy and demanded that defendant return the purchase price and the amount paid for transportation, and that it refused her offer to return the goods and refused to pay the money. These allegations were admitted by the answer which merely put in issue the allegations with respect to McCarthy's incompetency at the time of the purchase and for nine years prior thereto, the adjudications with respect to his incompetency and the appointment of the plaintiff as his committee.

At the commencement of the trial counsel for the defendant contended that the effect of the allegations of the complaint was that the contract was *void* and he argued that since there was no adjudication of incompetency and appointing a committee prior to the purchase of the property the contract was merely voidable and that the action should have been brought in equity for a decree avoiding it.   Counsel for the plaintiff insisted that he was proceeding on the theory that the contract was merely voidable and that the committee could avoid it and bring this action at law as she did.   Where a person is, pursuant to law, duly adjudged insane or otherwise incompetent and a committee has been appointed the world is chargeable with notice and every contract thereafter made with him is absolutely void (*Wadsworth* v. *Sharpsteen,* 8 N. Y. 388; *Carter* v. *Beckwith,* 128 id. 312; 14 R. C. L. 582); but contracts made by an incompetent person before such an adjudication and appointment are voidable only and at his election on recovering from the disability or at the election of his committee or personal representatives or heirs, and on such election being made, an action either at law or in equity may be brought or defended for the restoration or retention of his property.   (*Blinn* v. *Schwarz,* 177 N. Y. 252; *Smith* v. *Ryan,* 191 id. 452; *Riggs* v. *American Tract Society,* 84 id. 330; *Goodyear* v. *Adams,* 5 N. Y. Supp. 275; affd., on General Term opinion, 119 N. Y. 650; *Van Deusen* v. *Sweet,* 51 id. 378.)   The plaintiff's offer to return the property and her demand that the purchase price and transportation charges be repaid and the refusal of the offer and demand were again formally admitted on the trial.   It does not appear to have been authoritatively decided in this jurisdiction whether on electing to avoid such a voidable contract, the consideration received by the incompetent must be tendered back.   In *Smith* v. *Ryan* (*supra*) the Court of Appeals, at pages 456 and 461, intimated that such is the rule, but at page 461 expressly refrained from deciding the point.   Contracts of infants and incompetents are voidable for their protection in the event that the contracts are not deemed to be beneficial to them.   In both classes of cases the right to elect to avoid the contract is based on the incapacity to contract.   It is well settled that the right of an infant to avoid or rescind

contracts made during his minority does not depend on his ability to restore the consideration or otherwise make restitution to the other party with whom he contracted or whether such party can be placed in *statu quo;* but to the extent that he still has the consideration the other party becomes entitled thereto. (*Green* v. *Green,* 69 N. Y. 553; *Kane* v. *Kane,* 13 App. Div. 544; *Dill* v. *Bowen,* 54 Ind. 204; *Carpenter* v. *Carpenter Admr.,* 45 Ind. 142; *Chandler* v. *Simmons,* 97 Mass. 508, 514; Hunt Tender, § 49.) It is said in support of that doctrine that the right to avoid or to rescind would be of but little value to the infant if he were required to make full restitution for that would afford him no protection in the event that through lack of mental capacity he had lost or squandered the consideration. The same reasons would apply to contracts made by incompetents; but in the one case the other party would ordinarily know whether he was dealing with an infant or an adult whereas there might be no ground for the slightest suspicion of incompetency. It would seem that one contracting with an infant with knowledge actual or imputed by law of his infancy and contracting with an incompetent knowing him to be incompetent should be held to have risked rescission without restitution; but where one in good faith contracts with an incompetent, not so adjudged, without notice or knowledge of his disability, it may well be argued that the exercise of the right of rescission will not be permitted where full restoration cannot be made for the reason that thereby an undue burden would be cast on honest traders, who would be helpless against such consequences, and that it would be more equitable to regard the loss caused by the affliction as the misfortune of the afflicted one. Although every one is chargeable with constructive notice where there has been an adjudication of incompetency it is evident one might innocently without actual notice contract with such a person; but the risk of loss from such contracts would be slight for ordinarily the incompetent is restrained or attended. A distinction is, therefore, made between the avoidance or rescission of contracts made by infants and those made by incompetents. With respect to the latter the rule is that if the contract was fair and for the benefit of the incompetent and made in good faith and with-

out notice of his incapacity and the other party cannot be placed in *statu quo*, these facts constitute an equitable defense to the avoidance or rescission to be pleaded and proved as such. (*Mutual Life Ins. Co.* v. *Hunt*, 14 Hun, 169; affd., 79 N. Y. 541; *Riggs* v. *American Tract Society*, 84 id. 330; *Goodyear* v. *Adams*, 5 N. Y. Supp. 275; affd., on opinion below, 119 N. Y. 650; *Riley* v. *Albany Savings Bank*, 36 Hun, 513; *Haines* v. *Scott*, 35 App. Div. 515; *Hicks* v. *Marshall*, 8 Hun, 327, 330; *Feigenbaum* v. *Howe*, 32 Misc. Rep. 514; *Loomis* v. *Spencer*, 2 Paige, 153; *Canfield* v. *Fairbanks*, 63 Barb. 461, 466; Hunt Tender, § 50, and cases cited.) If it was incumbent on the plaintiff as a condition of exercising her right to avoid or rescind, as I think it was, to tender the property back, then, strictly speaking, the allegation with respect to the offer to return the goods is insufficient for it is not alleged that the defendant knew that McCarthy was incompetent or was informed that the offer was made on that ground; but it appears to have been assumed without question on the trial and has been on the appeal that the offer in that regard was sufficient. The only point made on the trial with respect to the offer to return the property was that it was not a sufficient allegation of *a tender* of the return of the property. In view of the facts already stated with respect to the nature of the property we are of opinion that the plaintiff was relieved by the defendant's refusal to accept the offer from making a formal tender (*Blewett* v. *Baker*, 58 N. Y. 611; *Ruben* v. *Lewis*, 20 Misc. Rep. 583; 2 Black Rescission & Cancellation, § 623; Hunt Tender, § 55; *Beickler* v. *Guenther*, 121 Iowa, 419; 96 N. W. Rep. 895), and that rule has especial application where as here a formal tender would be inconvenient and involve considerable expense. (Black, *supra*, p. 1456, §§ 626, 628; *Hayden* v. *Demets*, 53 N. Y. 426; *Roots Co.* v. *New York Foundry Co.*, 56 Misc. Rep. 687; *Slingerland* v. *Morse*, 8 Johns. 474; *Mundt* v. *Simpkins*, 81 Neb. 1; 115 N. W. Rep. 325.) The plaintiff showed that McCarthy bid recklessly and attempted to purchase everything put up for sale and with a view to showing that the property for which he paid this large amount was of but little value she called an auctioneer who examined the property after it had been

First Department, March, 1918.            [Vol. 182.

delivered to McCarthy and after the commencement of the action.   It became necessary to call the plaintiff to the stand in order to show that all of the property was exhibited to this auctioneer and she testified that it was.   On her cross-examination it was shown that she asked the auctioneer to take the property and sell it at public auction and get as much as he could for it and that he examined all of the property and agreed to remove and sell it.   The auctioneer then testified that the market value of the property was between $250 and $275 and not more than $300; and that it was useless stuff and had but little value.   On the cross-examination of the plaintiff later on counsel for defendant showed that the auctioneer took all the property away *and sold it*.   He then asked her what was realized on the sale.   This was objected to by counsel for plaintiff as not within the issues.   The objection was at first sustained but counsel for the defendant insisted that it was admissible for various reasons, none of which he specified.   The court then expressed the view that it might be admissible in reduction of damages and changed the ruling and decided to receive the evidence, whereupon counsel for the defendant remarked, " I think there are other reasons, but, however, one is enough."   He then renewed the question as to how much the plaintiff received on the sale of the property and the court ruled that it would be received in reduction of damages but for no other purpose.   Counsel for the plaintiff then suggested, in effect, that he desired that it be understood that proof of the amount realized be not received as evidence of the *ratification* of the purchase as plaintiff was not prepared " to go into that."   Counsel for the defendant thereupon remarked, " I want to clear that right up.   Such a thought as working a ratification out of it, I had no thought of, and I disclaim it now, but I, of course, did think we were entitled to show—."   The record shows that the court here interrupted with the remark that the amount received would be deducted from any amount to which the plaintiff might be entitled.   Counsel for the defendant did not dissent from that, but remarked, " It also has the further fact, which I desire to bring out, that they no longer have the furniture."   That, the court replied was immaterial whereupon counsel for the defendant asked the

court to reserve judgment on the point and to allow him to bring it up later, and the court assented. The fact that the property had all been sold had already been shown and, therefore, the *amount* received for it could be of no importance save on the theory suggested by the court and so acquiesced in by counsel for defendant who evidently expected, as will be seen presently, a much larger credit for his client by proving the amount, concerning which he was under a misapprehension, received by plaintiff. Plaintiff then testified that she received net the sum of $135.57. Counsel for the defendant seemed surprised at that and stated that he understood the property brought $700. The auctioneer had left at this time and plaintiff was unable to produce him at the adjourned session and after some discussion wherein the court informed counsel for the defendant, in substance, that he was only entitled to the benefit of the sale as a matter of courtesy and fairness as *it had not been pleaded* and expressed the hope that the plaintiff would make a sufficiently liberal allowance to satisfy counsel for the defendant. Finally, counsel for plaintiff offered to allow $200 to which counsel for defendant replied, " I will take that, if your honor please, but I am very glad, indeed—." The record does not disclose anything further with respect to any claim made by counsel for defendant on this evidence.

Counsel for the defendant argues that on account of this having been an auction sale by a warehouseman the purchase could not be rescinded for the reason that defendant could not be restored to its former position. It does not appear in what respect it could not be so restored. It may be that the defendant had distributed the proceeds of the sale and was unable to obtain reimbursement; but no such defense and no equitable defense of any nature, within the rule already stated, was pleaded and it is, therefore, unnecessary to consider whether there could be an equitable defense on the theory that restoration of the consideration received by the incompetent would not restore defendant to its former position. Defendant's counsel also contends that the plaintiff by selling the property rendered it impossible to restore defendant to its former position. If the sale by plaintiff had been before she brought the action and it had been

pleaded, the point would be troublesome were it not for the proceedings on the trial, the substance of which, so far as material thereto, have been stated; but it was not pleaded. On the election of the committee to avoid the purchase it would seem that title became revested in the former owners with the right to possession and to pursue any remedy therefor in the defendant. (*Lamb* v. *Lathrop*, 13 Wend. 95; *Wilder* v. *Seelye*, 8 Barb. 408, 412; *Billings* v. *Vanderbeck*, 23 id. 546; *Brooklyn Bank* v. *De Grauw*, 23 Wend. 342; *Hayden* v. *Demets*, 53 N. Y. 426, 431; *Des Arts* v. *Leggett*, 16 id. 582; *McPherson* v. *Wiswell*, 16 Neb. 625; 21 N. W. Rep. 391. See, also, *Kortright* v. *Cady*, 21 N. Y. 343.) Assuming that the rejection of the offer to return the property rendered a formal tender unnecessary, as I think it did, then the only issue arising on the pleadings was with respect to whether or not McCarthy was incompetent. Doubtless if plaintiff had subsequently refused to deliver the property to defendant the effect of her offer to return it would have been destroyed (Black, *supra*, §. 623), but no such issue was presented. The plaintiff undoubtedly had the right on defendant's refusing to take the property to retain it or store it for the account of the defendant, but her only right would be as a bailee. (*Slingerland* v. *Morse*, 8 Johns. 474; Black, *supra*, § 623; *Comer* v. *Franklin*, 169 Ala. 573.) In what circumstances, if any, she could have sold the property without affirming the purchase (See *Clark* v. *Wells*, 127 Minn. 353, and note, L. R. A. 1916 F, 476; note, 42 L. R. A. [N. S.] 674; *Moore* v. *Potter*, 155 N. Y. 481; *Dustan* v. *McAndrew*, 44 id. 72, 78) it is unnecessary to consider or decide, for the defendant accepted the ruling of the court that the only theory on which the amount realized on the sale of the property by the auctioneer by plaintiff's direction would be received was in reduction of damages. The defendant having, under that ruling, shown the amount realized on the sale and having accepted the stipulated amount in reduction of plaintiff's claim, must be deemed to have ratified the sale made by the plaintiff and to have elected to accept the proceeds as the market value of the property. This view is further sustained by the fact that counsel for the defendant expressly agreed that the amount of the recovery, if any, should be the amount paid by McCarthy

to the defendant less the amount realized on the goods together with interest.

Error is also predicated on the refusal of the court to submit to the jury the question as to whether defendant at the time of the sale had notice that McCarthy was incompetent. That would have been material had defendant pleaded an equitable defense to the rescission, but as it did not it was immaterial whether it knew or had reason to believe that McCarthy was incompetent.

I am of opinion, therefore, that the judgment is right and should be affirmed.

Clarke, P. J., Dowling and Page, JJ., concurred; Shearn, J., dissented.

Shearn, J. (dissenting):

This suit is based upon a rescission. There was no tender, but the bulky nature of the goods excused a strict tender. Where, however, the plaintiff asks to be excused from making a tender and to substitute therefor an offer to return the goods, it is incumbent upon the plaintiff to show that the defendant was informed of the reason why the offer was made, if the defendant is to be mulcted in damages for its refusal to accept the goods. The defendant should have been informed that the goods were being returned because they had been purchased by an insane person and that the transaction was rescinded on that ground. The defendant would then have understood the consequences of its refusal to accept the goods. Particularly should this be the case where, as here, the defendant acted in good faith and without any notice, either at the time of the sale or at the time of the offer to return, that the purchaser at the auction sale was or was claimed to be insane. Unless some legal ground were advanced for avoiding the sale, the defendant would naturally refuse to accept a return of the goods months after they had been sold in the regular course of its business. The failure to give any notice that the sale was rescinded on the ground of insanity was aggravated in this case by plaintiff's disposing of the property, and making it impossible to restore the *status quo,* without any notice to the defendant, thus cutting off any chance for the defendant to protect itself on the sale

or by taking steps to avoid the sale. The goods were not perishable and the least that the plaintiff could have done, considering the good faith of the defendant, was to have notified the defendant of the sale. Of course, the defendant might have pleaded these facts, but it could be subject to no liability until the plaintiff established the cause of action alleged. Plaintiff failed to establish any rescission before suit because of failure to notify the defendant of the ground upon which the offer to return the goods was made. There having been no valid and effective rescission before suit, the only action maintainable under the circumstances was one for a rescission, in which it would be obligatory for the plaintiff to restore the *status quo.* In view of the fact that when the defendant refused to accept the offer to return the goods it had no knowledge of the grounds of the offer or that it was claimed that the purchaser was insane, and considering the sale of the goods without notice to the defendant and the fact of defendant's good faith throughout, I think that the judgment should be reversed and a new trial ordered.

Judgment and order affirmed, with costs.