HANNA A. VERSTANDIG, Respondent, *v.* BABETTE SCHLAFFER, Individually and as Executrix of WOLFGANG SCHLAFFER, Deceased, et al., Appellants, et al., Defendants.

Judgment affirmed, with costs.

MARTIN, P. J. (dissenting). This appeal presents a problem as to the enforcibility of a contract of an insane person.

As a result of an advertisement in a German language newspaper on March 30, 1943, offering property 316 East 84th Street for sale at $38,000, Wolfgang Schlaffer entered into negotiations with John X. Duch, a real estate broker, and later with plaintiff. These negotiations ended with Schlaffer's signing on April 6, 1943, a contract to purchase the property for the sum of $35,000. He was to take title subject to a first mortgage of $21,140, execute a purchase-money mortgage for $7,000 and pay $6,860 in cash. In accordance with this contract, title was transferred on April 29, 1943. Sixteen days thereafter and on May 15, 1943, Schlaffer was placed in an institution for mental diseases and until his death on August 9, 1943, a little more than three months after taking title, Schlaffer was confined in various institutions for mental diseases. However, he was never adjudicated an incompetent.

The purchase-money mortgage which Schlaffer executed at the time of his taking title on April 29, 1943, gave the holder thereof the right to foreclose should default in the payment of any installment of principal or interest on the prior mortgage continue for ten days. Because of failure to comply with the terms of the first mortgage, plaintiff instituted this action to foreclose the purchase-money mortgage on June 23, 1943. A receiver was appointed on June 28, 1943, and entered into possession and control of the property on or about July 1, 1943.

After the death of Schlaffer, the complaint was amended and a supplemental summons issued substituting in the place of Schlaffer as defendant, Babette Schlaffer, his widow, individually and as executrix of his last will and testament, and Ernest Schlaffer, Betty Schidlo and Lisa Schlaffer. These defendants interposed an answer setting up the insanity of Schlaffer as a defense and asked that the contract of sale entered into between plaintiff and Schlaffer be rescinded; they offered to return and reconvey the property to plaintiff, asked for return of the purchase money, subject to adjustment of any and all equities of the parties in the premises and cancellation of the bond and purchase-money mortgage.

The trial court has found that on April 6, 1943, and prior thereto Schlaffer was insane, of unsound mind and incompetent, that he was insane during the entire month of April, 1943, and between April 29, 1943, and the date of his death on August 9, 1943, continued to be insane, of unsound mind and wholly incompetent. It was further found that plaintiff was not informed nor was she aware throughout the negotiations, throughout the drawing of the contract on April 6, 1943, and the closing of title on April 29, 1943, and in the interim that Schlaffer might then have been mentally unbalanced, of unsound mind or suffering or harboring any delusions of any nature. It was also found that there was no fraud committed by plaintiff or anyone on her behalf in connection with the making of the contract and the conveyance, that the price paid by Schlaffer was neither unconscionable nor inequitable.

In *Martin* v. *Teachers' Retirement Bd. of City of N. Y.* (269 App. Div. 115, 117), this court said: " A contract made with a person duly adjudged incompetent and for whom a committee has been appointed is absolutely void. (*Carter* v. *Beckwith et al.*, 128 N. Y. 312.) Bargains or contracts made by an incompetent person before such an adjudication and appointment are

voidable. They may be set aside after his death by his proper legal representatives. This has long been the rule. (Bishop on Contracts [2d ed.], § 974; 1 Williston on Contracts [Rev. ed.], § 253; *Ingraham* v. *Baldwin,* 9 N. Y. 45, 48; *Blinn* v. *Schwarz,* 177 N. Y. 252; *Smith* v. *Ryan,* 191 N. Y. 452; *Finch* v. *Goldstein,* 245 N. Y. 300, 303; *McCarthy* v. *Bowling Green Storage & Van Co.,* 182 App. Div. 18, 21.) ''

It is urged, however, that a contract of an incompetent with a bona fide purchaser is not even voidable. *Goldberg* v. *McCord* (251 N. Y. 28) is relied upon for that proposition. In that case it appears that in 1906 William Taylor and his two sisters as tenants in common conveyed to Frank Powers and Thomas J. McCord real property at Westbury, Nassau County, N. Y. Thereafter Thomas J. McCord conveyed his interest in the premises to Charles A. McCord. Powers having died, his interest in the premises passed to Nassau Trust Company as devisee and trustee. Charles A. McCord and the trust company contracted to sell the property to the plaintiffs. The plaintiffs rejected title for the reason that Taylor had been adjudged incompetent in 1924 and the evidence in the incompetency proceeding indicated that Taylor's mental incapacity might have existed in 1906 when he conveyed the property to Powers and McCord. It appeared also that between 1899 and 1923 Taylor had made about twenty-five conveyances or deeds. The plaintiffs succeeded in recovering a judgment for the amount paid by them on their contract. In reversing, the Court of Appeals said among other things (pp. 31–33): '' Such a holding would be most disastrous to real estate titles and make the sale of real property extremely difficult and uncertain. * * * In this case the plaintiffs made no attempt to prove that the grantees of William A. Taylor in 1906 were not *bona fide* purchasers for value. They rested their case entirely upon the incompetency proceedings. In fact, the record shows, and the fair inferences to be drawn from it are, that both Powers and McCord had purchased the property in question for a fair price, and had no notice of any defective mental condition upon the part of William Taylor. His deed was duly executed, acknowledged and recorded. Although the result would in no way change a well-established principle of law, yet the consequences may be considered in our search for the law and in our efforts to determine what it is and has been. To hold that a mere doctor's statement on incompetency proceedings renders unmarketable all titles passing through the alleged insane person as far back as the doctor, in his opinion, states the affliction to have existed, would unsettle the other twenty-five titles which have come down through William Taylor, and we know not how far such a ruling would cut into real estate ownership in this State.''

It is true that in *Goldberg* v. *McCord* (*supra,* p. 32) the Court of Appeals said: '' An insane person, before office found, may convey a good title; his deed is not void, but voidable (*Finch* v. *Goldstein,* 245 N. Y. 300); and *it is not even voidable as against bona fide purchasers for value without notice of the incompetency.*'' (No italics in original.)

It is doubtful that any such absolutely unyielding rule was intended to apply to all transactions. The more equitable rule would be that, where the parties can be restored to their original position, the court will set aside a contract of an insane person even though it has been entered into in good faith without fraud or imposition and before an adjudication. That is the rule set forth in 46 American Law Reports at page 419, as supported by the great weight of authority including cases cited in support of the unqualified rule urged by the respondent herein. Among the cases cited is *Mutual Life*

*Ins. Co.* v. *Hunt* (79 N. Y. 541) where it appeared that the defendants were unwilling to surrender the benefits of the contract and restore the parties to *status quo*. In that case there was also a finding that the incompetent was of sound mind at the time of the transaction sought to be undone. Of course, in *Goldberg* v. *McCord* (251 N. Y. 28, *supra*), it was obviously impossible to restore the parties after the passage of more than twenty years with rights of third parties intervening.

In the case at bar the appellants have expressed a willingness to adjust the equities between the parties. There is no suggestion that the rights of any third party intervened in the short time that this property was in the control of the incompetent and before it was placed *in custodia legis* through the receivership. Having in mind the time element involved here, no injustice would be done by allowing the appellants to rescind the transaction and restore the respondent to *status quo*. To do otherwise in the circumstances would be inequitable.

The judgment in favor of the respondent should be reversed and judgment directed in favor of the appellants rescinding the transaction with adjustment of equities.

Townley, Glennon, Callahan and Peck, JJ., concur in decision; Martin, P. J., dissents in opinion.

Judgment affirmed, with costs. No opinion.